Turney, J.,
delivered the opinion of the court.
The plaintiff in error was convicted of murder in the first degree, sentenced to death by hanging, and has appealed to this court.
The conviction was had in the “common law and chancery court of the county of Madison.” The act establishing this court, and defining its jurisdiction, was passed March 17th, and approved by the governor, March 19, 1875 [Acte 1875, ch. 60], and provides that it “take effect from and after its passage, the public welfare requiring it.”
By art. 6, sec. 1, of the constitution, the legislature had the power to create this court, and by art. 7, sec. 5 [the preceding section, and Shannon’s Code, sec. 381], it was in the power of the governor to appoint the judge, to hold his office until the next biennial election of civil officers. No election of judge could have been had before such biennial election.
Th'e objection that the judge was appointed and not elected, is not well taken.
Hon. H. W. McCorry, judge, etc., being incompetent to try the cause, ordered an election for a special judge. The election, was held as prescribed by law, when Howell E. Jackson, a member of the bar*, received ten of the eleven votes cast. It appears there are twenty-six members of the bar, some of whom were out of the city, and others failed to answer to their names, when called at the door of the courthouse. It is clear a majority had an opportunity to vote, and declined to do so, and we are aware of no law compelling them to vote. The election having been ordered and conducted in the manner prescribed by law, we are unable to appreciate the objection to its regularity and legality.
On the 17th of July, 1875, the court adjourned to' meet on 'the 16th of August, a term of the chancery court intervening. There can be no objection to this. It can make no difference whether it be a special or adjourned term.
*481 In the election of a jury, the name of J. E. Askew was ealled. J. O. Askew answered, and stated that he had been summoned, and that there was no such man as J. E. Askew, whereupon the court directed the clerk to change the middle initial from “E” to “0.” There was no error in this.
During the call of the names, as they were taken from the hat, about half a dozen failed to answer, and the names were ordered by the court to be laid aside to be called again when the panel was exhausted.
We imagine it would be difficult to instance a case of homicide in which the precise thing done here, and a like course of the court, did not occur. When the defendant is furnished a panel, he may require the parities to be present before he can be compelled to proceed to the election of the jury. And if all are not present, and cannot be conveniently and readily made so, it would be the duty of the court to direct a complete panel of names of present persons.
But if the prisoner makes no objection, because of the absence of any who have been summoned, or does not require their presence, the court may very properly proceed with the selection of the jury, without inquiring whether all summoned are present. It appears from the record that ■ no right was lost to the defendant by the action of the court. By law the accused is entitled to a panel of a fixed number of names, and when that panel is furnished him, be may demand the presence of those named, or a substitution of others for the absent ones. The furnishing to him a panel does not give to him a vested right to those names and none other, from whom the jury is to be drawn. All he can claim is a panel of good and lawful men. In the instance of the juror Askew, as in all others, when changes were made in the panel, the court gave to the prisoner a reasonable time to examine the list, and thus the *482 whole purpose of allowing him the panel was accomplished in compliance with tbe statute.
The sixth juror selected was John Ingram, on the 9th of September. On the 11th defendant asked leave of the court to peremptorily challenge said juror, stating he did not desire to challenge for cause but peremptorily; that he had no ground of challenge for cause. It is insisted the defendant had the right of peremptory challenge at any time before the jury was sworn to try the case, and a number of cases holding the doctrine have been cited. While we concede the courts so holding are tribunals of high authority, we cannot concur with them on this question. Under our system the evils to result from such practice are so numerous and subversive as to suggest themselves to the mind of a lawyer without their enumeration, upon the bare suggestion of the plan. In our practice and by our statutes every necessary opportunity is given to the accused to inform himself of the character of the jurors to be tendered to him, before he is put to the necessity of an election of them for his trial. He is entitled to a list of the jurors summoned, to he furnished him a reasonable time before the formation of the jury is commenced. [Shannon’s Code, sec. 7181.] It is by law made tbe imperative duty of the court, if he demand it, to grant him this advantage and opportunity, that he and his counsel may be advised; that they may consult together and with friends before being compelled to take part in the formation of a jury. This statute directing this is authority against the rule insisted upon. To act upon the statute presupposes conclusively, that the accused is informed of the kind and character of men composing the list, and has with his counsel canvassed all the causes for peremptory challenge, as they may affect each man whose name appears on the panel. These things being done, what reason can. there be for permitting a peremptory challenge after a deliberate election of the juror, when it is announced there is no *483 ground of challenge -for cause. To establish ¡the right of peremptory challenge at any time before the swearing of the jury would be the defeat of fair and impartial trials in many instances, especially in the smaller counties.
During the argument on the proof of insanity, and of the weight due to the fact of suicide by a member of defendant’s family, the court said, “suicide per se is not evidence of insanity.” This was merely the announcement of a rule of law in the state and was not objectionable.
The objection to the testimony of Gilbert Anderson, that the prisoner bought a gun and some shot from him on the day before the killing, is not well taken. It was legitimate to show the prisoner had the means of doing the deed, and afterwards to show the shot extracted from the wound corresponded with those bought by tbe prisoner.
We have heretofore held the law reducing the num ber of peremptory challenges to be constitutional, are satisfied with the correctness of that holding, and will not discuss the question here. [See Burke v. The State, ante, 465.]
It is insisted in the motion for a new trial that W. E. Waddell had formed and expressed an opinion, and was an incompetent juror. The history is this: Parish had some conversation with the juror after he was summoned, gave him a statement of the facts as he had heard them, but told him he had not been present at the former trial, nor had he heard any of the witnesses, but spoke only from rumor. It also appears the facts as reported hy Parish to Waddell are not those developed on this trial.
If the conversation between Parish and Waddell had been disclosed when he> was being qualified as a juror, it would not have rendered him incompetent, whatever may have been the statement from Parish 1» Waddell, as it was not based upon such information as would have challenged the juror. The facts detailed were not derived from one *484 who either knew the facts of the case or learned them from persons professing to> know them.
It cJearly appears from the statement of Parrish taken together, that Waddell gave no ear to his detail of the facts of a supposed case, Waddell could not in truth have stated on his voir dire, that he ha,d formed or expressed an opinion. The state proposed to examine Waddell and the court refused.
The court charged the jury: “You are the sole judges of the facts. It is the duty of the court to instruct you as to the law applicable to the case. The court is a- witness to you as to the law governing the case, but if you are satisfied the court has erred in its statements of the law, as given to you and as applicable to the case, you may disregard its instructions and adopt your o.wn views of the law, but before you do so you should feel convinced of the court’s error.” This was in strict accordance with the rule as long acted upon in the state, and is as far as the courts can go in the exercise of constitutional authority, restricting the powers and duties of a court, and enlarging those of juries. We do not propose to disturb tire rule as at present etsablished, but will fortify our conclusion ‘by reference to that part of art. 1, sec. 19 of the declaration of rights [in our constitution], from which the rule claims derivation in the words, “in all indictments for libel, the jury shall have a right to determine the law and the facts, under the direction of the court as in other criminal cases.”
This clause was inserted in our hill of rights at a time when it was a mooted question in England, whether in libel eases, the province of the jury extended beyond the mere finding of the fact of publication, leaving the question of libel or no libel to the court. Th'e government being the mover in most of such cases, and judges depend-ant upon it for their positions, and juries not always sympathizing with either, and being disposed not to convict in groundless prosecutions, merely for the sake of convic *485 ti on, their powers were for a long time restricted as indicated. To avoid such rule operating as precedent or authority with us, this clause became part of our organic law, and was meant simply to confer upon the jury the right and duty of finding a general verdict under the law and facts, under the direction of the court. There has never been a time in our history when the jury was not the sole judges of the facts; hence, it must follow that, the concluding paragraph of the clause quoted was employed to designate the source whence the jury should derive a knowledge of the law governing the case submitted to- it. From these truths it further results, that when the case is removed into a court of last resort, its action is directed to supposed errors of law 'in the court and of fact in the jury- .
Several other objections are urged to the charge, but reviewing them connectedly, and in their proper relations to the charge as a whole, we think: there is no error.
The facts fully warrant the conviction. Affirm the judgment.