## UNITED STATES v. DAVIS.

### (Circuit Court, W. D. Tennessee. May 22, 1900.)

1. **NEW TRIAL—JURY—PEREMPTORY CHALLENGES—TIME FOR MAKING—STATE STATUTE.**

   Under Mill. & V. Tenn. Code, § 6050, providing that, "in impaneling a jury for the trial of any felony, the court shall not swear any of the jurors until the whole number are selected for a jury," the state, on the trial of an indictment for criminal conspiracy, under which defendant may be punished capitally, is entitled to peremptorily challenge a juror who has been passed and accepted by both sides after their examination of him on his voir dire, and the jury has been completed, but not sworn.

2. **SAME—COMMON-LAW RULE.**

   The rule at common law being that the right to peremptory challenge is open until the jury is sworn to try the case, the state is entitled, on the trial of an indictment for a felony in the federal courts, independent of any statute, to challenge a juror peremptorily after he has been passed and accepted by both sides, and the jury completed, but not sworn.

3. **SAME—CHALLENGE FOR CAUSE—PARTIALITY OF JUROR.**

   After a juror has been accepted by both sides, and has taken his seat in the box, he may, upon announcing himself as feeling disqualified to act impartially, before being sworn, be directed by the court to stand aside.

4. **SAME—CHALLENGES—PRACTICE IN FEDERAL COURTS.**

   The federal courts are not bound to follow the practice of the state courts in respect to the allowance of challenges to the jury in criminal cases, the primary consideration being, by whatever mode of challenging adopted, to secure to the accused all of his rights of challenging.

5. **SAME—TIME—PREJUDICE.**

   Where defendant in a criminal case has the right of 14 peremptory challenges to the jury remaining to him, he cannot complain of the state being allowed, before the jury is sworn, to peremptorily challenge a juror who has been once passed and accepted by both parties.

6. **SAME—SEPARATION—PREJUDICE.**

   Where the separation of the jury is made a ground for new trial by defendant, he must show prejudice by something more than the bare fact of separation, unless the circumstances of the separation are of themselves sufficient to indicate prejudice.

7. **SAME—BURDEN OF PROOF.**

   Allowing a juror, under the eye of an officer having the jury in charge, to go into the lavatories and closets, to go to a drug and other stores, to ask the marshal for supplies, and to speak to men in the court room in the hearing of the marshal, is not such a separation of the juror as creates a presumption of prejudice, and imposes upon the state the burden of proving that no prejudice resulted.

8. **SAME—UNSWORN BAILIFF.**

   The omission to have the bailiffs placed in charge of the jury specially sworn, on the trial of a felony, is not a ground for new trial in the federal courts, although it is so under the practice of the courts of the state where the trial is had.

9. SAME—TAKING NOTES OF TESTIMONY—SUPPRESSION BY COURT.

The refusal of the court, on the trial of one for a felony, to permit certain of the jurors to take notes of the testimony, and requiring them to surrender notes previously taken by them until after the trial, is not ground for a new trial.

10. SAME—CHALLENGE FOR CAUSE—PREJUDICE.

Where the jury, on the trial of a felony, was sworn when 14 of defendant's peremptory challenges were unused, defendant is not entitled to a new trial because a challenge for cause by the state was sustained to two jurors, to whom a former officer of the court had spoken in excuse of defendant's crime, and with expressions of friendship.

11. INDICTMENT—DUPLICITY—CONSPIRACY—MURDER.

Under Rev. St. U. S. § 5508, providing for the punishment of conspiracy to injure or intimidate citizens in the exercise of their civil rights, an indictment charging one with having conspired to injure, oppress, threaten, and intimidate a United States marshal and his posse, and to deprive them of their constitutional right to arrest him on legal process, and resulting in the killing of the deputy marshal, is not objectionable as charging defendant with both conspiracy and murder.

12. CONSPIRACY—ACQUITTAL OF RESULTING CRIME—PUNISHMENT.

Although one charged with conspiracy to intimidate citizens in the exercise of their civil rights, in violation of Rev. St. U. S. § 5508, and with murder as the result of such conspiracy, be acquitted of the murder, he may yet be punished for the conspiracy, if that charge is established.

George Randolph, Dist. Atty., and Frank Smith, Asst. Dist. Atty., for the United States.

D. A. McDougall, for defendant.

HAMMOND, J. The defendant, being on trial for a criminal conspiracy in the accomplishment of which a deputy marshal of the United States had been killed, was entitled to 20, and the government to 5, peremptory challenges. Rev. St. §§ 819, 5508, 5509; Mill. & V. Code Tenn. § 5352.

Juror No. 6, having been accepted by both sides, took his seat in the box, but, upon hearing an argument as to a challenge for cause, himself announced that he felt disqualified to act impartially, and upon a further examination on his voir dire was set aside, without objection by either party.

The district attorney had peremptorily challenged two of the venire as they were called and examined on their voir dire, and the defendant six, when the box became full. But before the jury had been sworn the district attorney asked to challenge peremptorily juror 9, who had been passed and accepted by both sides after their examination of him on his voir dire, to which objection was made by the defendant. By the Tennessee Code, it is required that, in "impaneling a jury for the trial of any felony, the court shall not swear any of the jurors until the whole number are selected for a jury." Mill. & V. Code Tenn. § 6050; Thomp. & S. Code, § 5215. Always, in this court, in all cases, civil and criminal, it has been the custom to swear the jury en bloc, as also it has been in the state courts. At common law, however, as will be seen from the citations in the authorities hereinafter mentioned, the practice was to swear each juror separately as he was called, qualified, passed, and accepted by the parties. After he had touched the book, by authority of the court, it was too late to challenge him for either cause or favor, or peremptorily; though as to cause or

favor this rigid rule of the common law was relaxed, if not in England, in some of our states, and such challenges were allowed even after the juror had been sworn, particularly if the cause or favor could have been made the ground of a new trial. The rule was quite universal that until sworn every juror was subject to challenge, peremptory or other, and the confusion on the subject comes from statutory changes or local usage brought about by departure from the common-law rule, such as that taken by the Tennessee statute above quoted. The plain object of that statute is to prolong, in felony cases, the privilege of challenge by peremptory objection. It is confined to felony cases, and assumes, possibly, that in other cases the old common-law mode of swearing each juror as he came to the book and box obtained. However this may have been in 1817, when this provision was first enacted, through its influence or otherwise the state practice, followed by us, has become almost universal to swear the jury as a whole in all cases, civil and criminal. Inquiry among the lawyers confirms this statement of the general practice. The result of such a practice would naturally extend the time of peremptory challenge, as of challenge for cause, until the jury in a body had been sworn to try the case. I am unable to see that this statute could have had any other purpose than to prolong the right of challenge, imperatively, in felony cases, and by adoption in other cases, through the natural tendency to conform the practice in all cases to this statutory command in the given cases.

Before further examining the state practice in this regard, it may be well enough to remark that in the case of Brewer v. Jacobs, 22 Fed. 217, 231, 244, this court had occasion to examine the practice as to impaneling juries, both at common law and in this court. See, also, Clough v. U. S. (C. C.) 55 Fed. 921, 927. That practice was followed in this case, with that modification which becomes natural, if not necessary, in treason or capital cases, because of the statutory requirement that the defendant shall have a list of the jurors and witnesses furnished him not less than three and two entire days, respectively, before he is tried. Rev. St. § 1033. Such a list was furnished in this case, since the defendant may be punished capitally, as if on indictment for murder, and therefore, although the regular venire had been qualified generally, and juries for the term impaneled, as described in the last-cited cases, and had been trying many cases, as each was called, yet, when this case was called, the venire, as it appeared by the furnished list, was recalled as if there had been nothing done. Each juror on the list, being sworn to answer such questions as should be asked him touching his qualifications, was examined by the court touching his statutory qualifications, and then turned over to the parties for examination upon the voir dire, by their counsel. Thus, the box became full, as before stated. The jurors in question had been "accepted"; that is to say, each had passed successfully the scrutiny of examination, and had been told by both sides to take a seat in the box, which he had done, neither being challenged by either side for cause or peremptorily. Neither had either been sworn to try the case, nor had any of their fellows already seated in the box. Perhaps either side might have reserved all peremptory challenges until the full 12 men had been thus "impaneled" or offered to them as a qualified jury.

Abbott, Jury Tr. § 18, p. 22, citing Bridge Co. v. Pearl, 80 Ill. 251, 254; Taylor v. Railroad Co., 45 Cal. 323; People v. Bodine, 1 Denio, 281; Hunter v. Parsons, 22 Mich. 96; Adams v. Olive, 48 Ala. 551; Spencer v. De France, 3 G. Greene, 216; U. S. v. Daubner (D. C.) 17 Fed. 793, 797; 4 Bl. Comm. 353.

Other authorities seem contrary to this, and perhaps the law upon the point has not been authoritatively settled either way, so that it may be certainly ruled. Thomp. & M. Jur. § 266 (2), citing Brandreth's Case, 32 Howell, State Tr. 773, and other cases on that side of the conflict; but also still other cases, too numerous for citation here, in accord with those first cited above, in favor of the right of reservation until the full jury is tendered. The author seems to favor this view, also, but the cases cited are not now accessible for our critical examination. The existence of the conflict accounts for the act of 1817 in Tennessee, and explains it. We have adopted the view that the time of all challenge is prolonged, in felony cases, at least; and while this indictment for conspiracy may not be, technically, a felony, it is beyond question that it is of that gravity that demands the same construction in its favor.

Returning for a moment to the relation of the actual practice in this case, it may be said that, in accordance with the custom here, and in the state practice as well, neither side pursued the better practice, if it were open to him, of reserving peremptory challenges for a full jury, qualified on voir dire, and ready to be sworn; but each exercised the right of peremptory challenge at once, as soon as the juror appeared and qualified, or as soon as any challenge lodged for cause was overruled by the court. Ordinarily, in common cases, one of the two juries impaneled at the beginning of the term is in the box when the case, civil or criminal, is called, and is thereby tendered to the parties. Either side examines for cause, and, the challenges being settled, quite always, as a fact, a full jury is in the box when the right of peremptory challenge is exercised. But in cases like this, where the jurors are called up, one by one, for examination and tender, we have fallen into the habit of overlooking the value of reservation, and the peremptory challenge follows an adverse ruling on a challenge for cause, or is promptly made without any preliminary examination whatever, as is often the case. If all the peremptory challenges are exhausted in the process, of course there can be no more, and this is so often the situation that, perhaps, we get the idea that it is too late after the juror has taken his seat, although he has not been sworn. Our Code has also, in state practice in civil cases, given an option of drawing the jury. Thomp. & S. Code, § 4026. If we followed the strict common-law practice, and did not mix the two, statutory and common law, as we do, it would, indeed, be too late; because before the juror had taken his seat, if there were no challenge for cause or peremptory, he would have "touched the book," and been sworn already to try the case on its merits, each separately, and not en bloc, as we always swear them. Thomp. & M. Jur. §§ 269, 269 (6). This particularity of our habits of practice is given because it lights up the obscurity and confusion of right in the premises as it is developed by the authorities. Id. §§ 265, 270.

At common law the district attorney's peremptory challenge was not too late. Until the juror had taken the book to be sworn to try the case, the right was open. That is clear from the decisions of the supreme court of the United States hereafter to be cited. Under the Tennessee statute above cited, in my judgment, it is especially preserved until the whole 12 are in the box ready to be sworn, the statute having no other reason whatever for its existence. It is true that by the ancient law the king had no peremptory challenge, and for this very reason he was not required to challenge for cause until the 12 men had all been gathered together by the exercise of the defendant's right of challenge for cause and peremptorily. The defendant could challenge as many as three full juries peremptorily, and the king was at that disadvantage. But by statute and modern usage, except as to difference in number, the prosecution and the defense stand on an equal footing as to challenges, and there is no longer any element of disfavor to the state's right of peremptory challenge, as far as it goes in number. The insistence, therefore, by learned counsel, that the Tennessee statute must not be construed to give the government an advantage of challenging after "acceptance," is untenable. Before we come to the Tennessee cases requiring consideration here, it may be remarked that all the authorities, and none more than those to be cited from the supreme court of the United States, insist that the main purpose of all these statutes is to favor the defendant's right of peremptory challenge, and that his protection in that right is the chief concern of the courts. Now, turn this case around, and let us suppose that a defendant were asking to do just what the district attorney asked here; could that requirement of liberal protection for him be realized without construing the statute as we construe it? Certainly not. Why, then, should not the same construction follow in favor of the government, all the ancient disfavor of the king in that regard being abolished by the statute? To preserve the benefit of the statute for the defendants, we must construe it as we do; and the conformity with the common law as to time, prolonged until the juror in question be actually "touching the book," strengthens that construction in his favor. The prosecution has the same right as to time within which a peremptory challenge may be made. This is equal and exact justice for both sides.

There would remain no doubt of this ruling but for the decision of the supreme court of Tennessee in the case of McLean v. State, 1 Tenn. Cas. 478, 482, where, under almost precisely the circumstances of this case, the defendant asked to challenge a juror peremptorily after he had been "accepted" and in the box two days, but before being sworn. First, it may be remarked that this case has never been officially reported, and we do not know how far the supreme court of the state may regard that fact as affecting its authority. Often courts do not desire such cases to be considered as binding precedents, and until the question is again mooted in that tribunal we may not be advised as to its authority. Next, it is very remarkable that the act of 1817 (Thomp. & S. Code, § 5215; Mill. & V. Code, § 6050), above quoted, was not noticed, and seemingly was entirely overlooked. Its pertinency is absolutely unquestionable, and, as before remarked, to my mind is conclusive in favor of the right of peremptory challenge under

the circumstances; indeed, also, to my mind, it is plain that, except to secure that precise right, the statute had no other reason for existence, as we have endeavored to show. The opinion does cite a later statute, one seemingly having its origin in the Code of 1858, though it was prior to that time a right of the defendant to have furnished him a list of the jurors according to the statute. 11 Hen. IV. c. 9; Bennett v. State, Mart. & Y. 133, 135; Thomp. & S. Code, § 5212; Mill. & V. Code, § 6047; Shannon's Ann. Code, § 7181. And it makes this statute the foundation of its reasoning and the ground of the decision. That statute enacts the substance of the English statute above cited, and declares the then existing practice, no doubt, as follows: "The defendant is entitled to a list of the jurors summoned, to be furnished him a reasonable time before the formation of the jury is commenced." This is almost identical with our United States statute on the same subject, substantially taken, perhaps, from the same old English statute, and first enacted by Act April 30, 1790, c. 9, § 29 (1 Stat. 118; Rev. St. § 1033). If the Tennessee statute furnishes a good ground for holding that the right here in question does not exist, there is no answer to the learned counsel for the defendant that the federal statute furnishes the same ground. But I do not think it does, and for the reasons already stated; mainly because the opinion and the reasoning overlook the state statute of 1817 (Mill. & V. Code, § 6050), first above quoted, and the conflict of authority that produced it. The opinion does say as follows:

"It is insisted the defendant had the right of peremptory challenge at any time before the jury was sworn to try the case, and a number of cases holding the doctrine have been cited. While we concede the courts so holding are tribunals of high authority, we cannot concur with them on this question."

The argument then proceeds to point out the inconveniences, "under our system," of allowing the challenge, and cites the one statute, overlooking the other, also a part of the same system, which, if my judgment is not at fault, was enacted in 1817 for the very purpose of adopting the ruling of these discarded cases from other courts. The argument ab inconveniente would not have been allowed to prevail over the command of another section of the Code, if its importance had been called to the attention of the court. The opinion cites no cases whatever, and, the reporter not having furnished us with those cited by counsel, we are left in the dark as to the extent or scope of the authorities from which the dissent was expressed.

In McClure v. State, 1 Yerg. 206, 213, 219, it is said by Whyte, J., that "the proper time for challenging is between the appearing and the swearing of jurors,"—citing the common-law books (1 Chit. Cr. Law, 545; 2 Hawk. P. C. c. 43, § 1; 1 Inst. 158a; and Case of Langham, Hob. 235); and by Catron, J.:

"The ancient and well-settled English authorities are that you cannot challenge the juror after he has been sworn, unless it be for cause arising afterwards. We adopted the right of trial by jury as we found it," etc. "Nothing is better settled for centuries in England than that after a juror is once sworn he cannot be challenged for any pre-existing cause."

—Citing 1 Inst. 158a; 3 Vin. Abr. E. 11, p. 764; 1 Yel. 24; 2 Hawk. P. C. c. 43.

As will be seen by examining the authorities, it was just as well settled that until he "took the book" to be sworn the right of chal-

lenge was open. Abb. Tr. Ev. § 15, p. 21; Thomp. & M. Jur. § 269 (6–8). The McLean Case, supra, changes this by substituting, as an innovation, the so-called "acceptance" or "election" as the moment of closure for the challenges, upon the argument of ab inconveniente, already noticed; thus curtailing the time, instead of prolonging it, as it would be under Thomp. & S. Code, § 5215 (Mill. & V. Code, § 6050).

The case of Gillespie v. State, 8 Yerg. 507, reiterates the ruling of McClure v. Same, supra; and is followed again in Ward v. Same, 1 Humph. 253; and yet again in Calhoun v. Same, 4 Humph. 477; also in Jarnagin v. Same, 10 Yerg. 529. In the case of Garner v. State, 5 Yerg. 160, where a juror had fallen sick after the trial began, the act of 1817 was much considered in its relation to peremptory challenges, and the case is instructive, though the matter of time of challenge was not in hand. But the case shows all through it, by frequent expressions, that the practice was well understood to be that the right of peremptory challenge, as well as that for cause, could be exercised at any time before the juror was sworn; and that each juror was not sworn, as at common law, separately, and as he appeared and qualified, but afterwards, when the jury was full. Nor is there any hint that his "election" or "acceptance" terminated the right of challenge if he had not been sworn, but sat in the box awaiting a full jury for that ceremony, as one of the sections of the act of 1817 required, and as the Code already quoted requires to-day. Judge Whyte, quoting Baron Wood in Rex v. Edwards, 4 Taunt. 309, 3 Camp. 207, says he directed that the new jury be sworn, and that the prisoner "was directed by the judge to challenge each of them, if he would, as they came to the book to be sworn"; showing that the utmost limit of the right was not passed until that moment. Should the fact that we do not now swear the jury separately upon the book, but all together, with uplifted hand, when the jury is completed, alter this rule?

The suggestion was not made that it does by any of the opinions in the last-cited case, which so learnedly detail all essentials of the practice of impaneling juries in criminal cases, as known in Tennessee at that date and under the act of 1817.

In the case of Hines v. State, 8 Humph. 597, the court speaks of a juror having been "accepted" by the attorney general, and "elected" by the defendant,—the very situation of both the jurors involved in this objection,—but it was ruled that the court might for any good cause discharge a juror that had been "selected," and select another, "until the jury shall have been sworn in the case." And so it was ruled in Lewis v. Same, 3 Head, 127, where precisely the same argument was made by counsel as here, that "after the panel was made up, by the election of the prisoners from the list of jurors presented to them, the jury was in law impaneled, and was as much the jury for the trial of the cause before being sworn as afterwards." The court says: "The discretionary power of the court to reject a juror, before being sworn, even in a capital case, for sufficient cause, cannot at this day be questioned." This was not a peremptory challenge, it is true, but it shows how open the jury is, until it is sworn, to challenge and change. The defendants then, as here, had not exhausted their challenges, and there could be no injury to him.

The case, however, directly applies to juror No. 6, in this case, whose discharge is now objected to on motion for new trial, and sustains the discharge. There does not seem to be a sound reason for any distinction between a challenge for cause and a peremptory challenge, so far as they relate to the time when either may be lodged. One is as much a right as the other, and neither is, properly speaking, an indulgence.

In Murphy v. State, 9 Lea, 374, also, a juror was challenged for cause by the state after he had been "selected," and even after he had been precipitately and prematurely sworn by the clerk, the swearing having been done so hastily that the counsel had not time to get in the objection he was endeavoring to make. The case shows the general rule. Again, it was not a peremptory challenge; but, again I repeat, it does not seem a material distinction, or any principle that should control a different judgment in either case.

Still another case is Taylor v. State, 11 Lea, 708, 718, where the juror had been "selected" two days, and before being sworn was thus discharged on challenge by the state for cause. The court said there could not be a serious question of the right, and the only matter for consideration was whether the court should have broken up the jury, and summoned a new jury, which was held not to be necessary.

In Boyd v. State, 14 Lea, 161, 165, after six jurors had been "elected," one of them, on his relationship to the parties being mentioned as a ground of challenge, stated that he should feel embarrassed, and he was discharged, although he was not technically disqualified. The discretionary power of the court was fully recognized. And Judge Story's remarks in U. S. v. Cornell, 2 Mason, 91, Fed. Cas. No. 14,868, are quoted and approved, that, "even if a juror was set aside for insufficient cause, I do not know that it is a matter of error, if the trial has been by a jury duly sworn and impaneled, and above all exceptions. Neither the prisoner nor the government in such a case has suffered injury." The statement by the juror of self-challenge in that case, as in this, was given weight by the court in exercising its discretion. They may challenge themselves. Thomp. & M. Jur. § 263. In Fletcher v. State, 6 Humph. 249, 256, a juror, on his own application, was permitted to stand aside for physical distress without the express consent of the prisoner, and it was held that the court had the power, and there was no error. This power is now conferred by statute, under the often-cited act of 1817, regulating the practice (Thomp. & S. Code, § 4028; Mill. & V. Code, § 4804).

And here, it may be said, in view of the objection taken in this case as a ground for a new trial, that one of the jurors on the list furnished the defendant was excused by the court on account of sickness before the case was called for trial, that if the court may excuse for that cause, under the statute, after the juror has been sworn, without breaking up the panel and beginning over again, it may also do so before the venire is called. It is a matter of necessity oftentimes, and the statute was passed, as these decisions all show, in the face of some dissenting opinions, to settle the conflict of practice, and avoid the necessity of beginning all over again after a panel was broken by sickness. The text-books are to the same effect. Abb. Tr. Ev. c. 2, § 21, p. 23; Thomp. & M. Jur. §§ 116, 159, 242, 259 (2), 259 (1),

note 4, 261. In the case of Lowrance v. State, 4 Yerg. (Tenn.) 145, this point is very nearly decided, if not exactly. The panel nominated by the county court was one short, having only 25 instead of 26,—a shortage that came, not by excusing one for sickness, but by inadvertence or mistake. It was held to be no ground for new trial, because, under the act of 1817, as at common law, the court could summon talesmen. Was the jury composed of good and lawful men, said the court, is the only concern, and "we deem it idle to refine in a court of error in reference to details of practice in the court below"; which is substantially the same thing said by Judge Story in the Cornell Case, above quoted. It is the right to reject undesirable jurors, and not to select particular persons out of the list, which is protected. Thomp. & M. Jur. § 159; U. S. v. White, 4 Mason, 158, Fed. Cas. No. 16,682; U. S. v. Marchant, 12 Wheat. 480, 482, 6 L. Ed. 700. The case of Ellis v. State, 92 Tenn. 85, 99, 20 S. W. 500, the last of the Tennessee cases to be cited, is where two of the jurors were discharged after they had been "accepted" for cause, and the cause sustained; evidently because they had not yet been sworn.

For my part, in judicial procedure, I am always anxious to conform the federal to the state practice where it is possible, not only for convenience, but because, also, courts and lawyers naturally fall into a habit of conformity such that unless distinctions are especially familiar, and more than technical, no attention is paid to them, or they pass sub silentio. The conformity act applies only to civil cases, indeed, but it promotes the habit in other cases as well, particularly in those mere details where refinement was deprecated by Mr. Justice Catron, when the great desideratum of impartial trial jury had been attained in fact. Therefore, when confronted with the case of McLean v. State, supra, it became a matter of concern that our long-fixed practice to the contrary in this regard had been challenged. This investigation develops that in this state that case stands alone in its ruling on this point, substituting the time when the juror is "accepted" or "elected" or "passed" as the foreclosure of the right of peremptory challenge for the time when he has been sworn, which was the foreclosure period at common law and under the act of 1817 in this state, passed as to one section for the very purpose of securing the longest and latest time. Mill. & V. Code, § 6050; Thomp. & S. Code, § 5215; Thomp. & M. Jur. §§ 265, 266 (2).

But the final and all-sufficient answer to the objection is that, whatever the state practice in this regard, it is not binding on the federal courts. Thomp. & M. Jur. § 164; U. S. v. Shackleford, 18 How. 588, 15 L. Ed. 495; U. S. v. Marchant, 12 Wheat. 480, 6 L. Ed. 700; U. S. v. Coppersmith (C. C.) 4 Fed. 198, 199; U. S. v. Richardson (C. C.) 28 Fed. 61, 69; Lewis v. U. S., 146 U. S. 370, 376, 379, 13 Sup. Ct. 136, 36 L. Ed. 1011; Pointer v. U. S., 151 U. S. 396, 405 (2), 412, 14 Sup. Ct. 410, 38 L. Ed. 208; St. Clair v. U. S., 154 U. S. 134, 147, 14 Sup. Ct. 1002, 38 L. Ed. 936; Logan v. U. S., 144 U. S. 263, 299, 12 Sup. Ct. 617, 36 L. Ed. 429.

The practice in this case was not precisely that described by the supreme court in either of the above-cited cases, but was that of the common law, as modified by the Tennessee statute before cited, and

103 F.—30

such as obtains in the state courts as described by the cases cited. The names on the venire were not put in a box and drawn out by a child under 10 years of age, as required by the Tennessee Code (Mill. & V. Code, § 6048; Thomp. & S. Code, § 5213), because that has never been the practice in this court since the venire itself has been drawn from a box in its original selection. The jurors are invariably called in the order in which they were originally drawn from the box, which is probably a substantial compliance with the above statute of the state. At all events, the same purpose is accomplished.

In the cases cited, the Arkansas practice of challenging is not given, but Mr. Justice Shiras in the Lewis Case quotes from the English cases, that the uniform practice has been that the juryman is presented to the prisoner and his counsel, that they may have a view of his person. Then the officer of the court looked first to the prisoner's counsel, to know whether they wished to challenge him. He then turned to the counsel for the crown, to know whether they challenged him; and, if neither made any objection, the oath was administered. And before any juryman was "brought to the book" the whole panel was called over in his hearing, that the prisoner might take notice who attended. Neither does the Pointer Case show what the Arkansas practice was, but both cases say that it was not binding on the federal courts, and that it was not followed in either case. Mr. Justice Harlan again quotes the common-law authorities, and on the point as to the time of challenge cites Chief Justice Tindal in Reg. v. Frost, 9 Car. & P. 129, 137, saying that "the rule is that challenges must be made as the jurors come to the book, and before they are sworn. The moment the oath is begun it is too late, and the oath is begun by the juror taking the book, having been directed by the officer of the court to do so. If the juror takes the book without authority, neither party wishing to challenge is to be prejudiced thereby" It is no doubt because of this strictness that the Tennessee statute was passed deferring the swearing of the jury until after the whole had been passed on their voir dire. The court decides that this is not necessarily the only mode, and that both cases say that the primary consideration always is that the accused shall not be embarrassed or prejudiced or injured by any mode adopted, the purpose being to secure all his rights of challenging the jurors. This being done, and no injury shown to him, if an impartial jury is secured the end of all practice is attained. He cannot demand that the prosecution shall challenge first, for at common law the prisoner challenged first; but in this case, following the state practice, the government was called on first, according to our uniform habit.

In the St. Clair Case the court had a general rule adopting the state practice, except that it in terms required, as at common law, that each juror should be finally sworn to try the case when he was called in his order, and, being examined on his voir dire, there was no challenge by either party. This closed, as at common law, all question of further time to challenge. But Mr. Justice Harlan again says it is open to the federal courts to adopt any system that does not prevent or embarrass the full and unrestricted exercise of the accused of his right of peremptory challenge, and is not inconsistent with any settled principle of the criminal law. That is the test. The practice

we follow is fully sustained by these cases beyond all question. It enlarges the defendant's right to the longest possible time for its exercise under the Tennessee statute, and the government has, necessarily, the same time, for our federal statute makes no distinction except as to the number of the challenges. Rev. St. § 819.

Another sufficient ground for overruling the objection is that the defendant, having had at the time of swearing the jury 14 of his peremptory challenges left, could not have been injured, since his right is that of rejecting undesirable jurors, and not that of selecting those he most prefers. The foregoing cases decided this. See, also, Hayes v. Missouri, 120 U. S. 68, 71, 7 Sup. Ct. 350, 30 L. Ed. 578; Hopt v. Utah, 120 U. S. 430, 436, 7 Sup. Ct. 614, 30 L. Ed. 708; Spies v. Illinois, 123 U. S. 131, 168, 8 Sup. Ct. 21, 31 L. Ed. 80; Alexander v. U. S., 138 U. S. 353, 11 Sup. Ct. 350, 35 L. Ed. 954.

This ruling sufficiently disposes of several of the other grounds of motion for a new trial. It was conceded to counsel for the defendant that the rule in Tennessee is very strict; that every separation of the jury is prima facie an injury to the defendant, and throws the burden on the state of explaining by proof that no injury took place in fact. Hines v. State, 8 Humph. 597; Odle v. Same, 6 Baxt. 161; King v. Same, 91 Tenn. 617, 625, 20 S. W. 169. But, even in Tennessee, unimportant and casual separations, where it is apparent that there was no opportunity for tampering with the jury, afford no ground for a new trial. Stone v. Same, 4 Humph. 37; Jarnagin v. Same, 10 Yerg. 529; Luster v. Same, 11 Humph. 170; Rowe v. Same, Id. 492; State v. Turner, 6 Baxt. 205; King v. State, 91 Tenn. 625, 20 S. W. 169; Cartwright v. Same, 12 Lea, 625. The supreme court, so far as the court is advised, has not decided any case determining the rule as to separation. The chief justice, in Mattox v. U. S., 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917, refers incidentally to the various rules as to the effect of the mere fact of separation, but it was not decided; for in that case the injury to the defendant clearly appeared, a newspaper article being read to them by the bailiff. Nor have I found the subject much considered in other federal courts. There is a statute in Connecticut as rigid as the ancient common law forbidding a separation, even in civil cases, which the courts enforced when objection was taken, although counsel claimed it was a dead letter in actual practice. The court in a civil case regarded the separation in fact as fatal in itself, and so enforced the statute. But it would not have been binding in a criminal case, as has been shown. Lester v. Stanley, 3 Day, 287, Fed. Cas. No. 8,277; Howard v. Cobb, 3 Day, 309, Fed. Cas. No. 6,755. But in Burrill v. Phillips, 1 Gall. 360, Fed. Cas. No. 2,200, in Rhode Island, Mr. Justice Story held, on argument, that it was discretionary with the court, and that the verdict would not be set aside if the conduct "be free from unfavorable presumption." And counsel convinced him on ancient common-law authorities that if the jury misbehave their verdict would not be set aside of course, although the jury would be fined; but, if the misbehavior be aided by the party in whose favor the verdict would be given, then it would be set aside; and he cites St. John v. Abbot, Barnes, Notes Cas. 441, as conclusive on the point. The report of the case cites the old common-law books to that effect also. In U. S. v. Gillies,

Pet. C. C. 159, Fed. Cas. No. 15,206, a quasi criminal case of forfeiture, Mr. Justice Washington, on a writ of error from the district court, curtly cut off counsel making the objection by saying "that, if there was any such irregularity in the conduct of the jury as ought to have set aside their verdict, it was in the discretion of the court below to act as was proper on the occasion, and that the decision of that court upon this point is not examinable by this court upon a writ of error or otherwise." In U. S. v. Gibert, 2 Sumn. 19, Fed. Cas. No. 15,204, Mr. Justice Story again, on motion for new trial, considers the subject of misbehavior of the jury in reading newspapers and drinking ardent spirits. The officers in charge permitted them to read nothing concerning the trial, and there appeared no reason to believe that it had the slightest influence. It was a great irregularity for the officers to permit it, and punishable. But "the court must clearly see that it is an irregularity that goes to the merits of the trial, or justly leads to a suspicion of improper influence or effect on the conduct or acts of the jurors." Also, as to the drinking, there was permission and consent of parties to necessary stimulants, and one of the jurors went to the bar and got a drink. There was no evidence of prejudice to the prisoner. A new trial was refused for such irregularities. In U. S. v. McKee, 3 Cent. Law J. 253, Fed. Cas. No. 15,683, an article in a newspaper prejudicial to defendant, and intended for the jury, was printed. If read by the jury, it would have been a good ground for a new trial. But the court had prohibited the jury from reading about the case. Two copies were bought by jurors, but there was no evidence that the article had been read, and in the absence of such proof it would be assumed that the jury had obeyed instructions.

Perhaps the reason why so few cases are found in the federal reports is that it is only recently that writs of error have been allowed in criminal cases. Besides, the universal custom in federal practice is not to shut up a jury except in capital cases, or those of such grave character that the court, in the exercise of its discretion, directs it to be done. Indeed, the learned district attorney argues that, the jury having acquitted the defendant of the murder or other homicides imbedded in this indictment, the conspiracy of which he was convicted not having been declared a felony by the statute, there was no occasion to keep the jury together in the mere misdemeanor which it was. U. S. v. Coppersmith (C. C.) 4 Fed. 198. But the quick answer to this is that they were kept together as a fact by direction of the court, and the rule of judgment should be the same.

Turning to the general authorities, it is clear that at common law, as modified by modern practice, the strict rule of Tennessee that any separation is fatal, unless explained to have been innocuous, does not obtain, but the rule is that the defendant must show that he has been prejudiced by setting out something more than the bare fact of separation, unless the circumstances of the particular separation indicate of themselves a suspicion of prejudice having been done. The last above cited cases all proceed on this rule in the federal courts, and they are supported by cases elsewhere. Thomp. & M. Jur. § 313, and cases cited; Rex v. Kinnear, 2 Barn. & Ald. 462; Rex v. Woolf, 1 Chit. 401; Thomp. & M. Jur. § 328, where the conflicting rule is considered.

But under either of these rules the district attorney has answered the requirement, even the strictest rule, as in Tennessee, and shown that no prejudice resulted. Every separation complained of is, from the nature of it, a necessary one, and the officer had the juror under his eye. Even in the matter of going into the lavatories and closets, the facts show that the juror was as much under surveillance as possible; and so as to the going to the drug and other stores, and to the marshal to ask for other supplies, and speaking to men in the court room during recess, but in the hearing of the marshal himself, though he was not in charge of the jury, and all such like occurrences. None of them was serious in its appearance on the facts shown. The learned counsel for the defendant argues, for example, that when a juror was talking to a sales clerk in a store, if the officer is not able to say just what the conversation was in words, or the clerk is not examined by the district attorney to tell what the words used were, the law presumes prejudice: or, going to a closet, if the officer is not able to say that no one came in to talk to a juror, prejudice is presumed, and so on,—requiring the district attorney to meet every trivial possibility of improper influence with plenary proof that none was had. The Tennessee rule requires no such strictness as this, and the common-law rule of ancient times, of keeping the jury without indulgence at all, would be preferable to such a burden, impracticable, if not impossible. Absolute isolation is not the rule of the common law anywhere. The legal right is to have a reasonable guaranty against improper influence, and the jurors may, under an officer, attend to their necessities. He need not indecently watch them, nor irksomely hamper them by disagreeable eavesdropping, when they are engaged in a presumably or apparently harmless intercourse with those who are serving their necessities. His attendance is sufficient when it is effective to prevent opportunity for tampering with the jurors, although there may remain a possibility of furtive influence. Such a possibility it is impossible to provide against, unless a juror is confined like a felon in a cell, with a death watch set over him, and even then the possibilities are not extinct. The law requires no such strictness in any case. Thomp. & M. Jur. § 320, and cases cited. The conclusion on this point is that there was no separation in fact, except those casual, unimportant, and trivial occurrences inseparable from a trial, and not within the rule; that such as did occur were shown to be harmless to defendant; and that, while it is not a matter of error or exception available in the appellate court, under our practice, in my judgment, the exception will be allowed and signed, that any doubt in that behalf may be settled by the appellate court.

The objection that the bailiffs placed in charge of the jury were not especially sworn would be fatal under the Tennessee practice, and this, also, was conceded to defendant's counsel. Spain v. State, 8 Baxt. 514; Johnson v. Same, Id. 450; Clark v. Same, Id. 591; Maynard v. Same, 9 Baxt. 225; Duncan v. Same, 3 Tenn. Cas. 596; Wallace v. Same, 2 Tenn. Cas. 616; Buxton v. Same, 89 Tenn. 216, 14 S. W. 480; Lancaster v. Same, 91 Tenn. 267, 286, 18 S. W. 777; Lea v. Same, 94 Tenn. 495, 497, 29 S. W. 900; Thomp. & M. Jur. §§ 322, 327. But, like the other, this practice is not binding on the federal courts. We have the direct authority of the supreme court

that, while it is more regular to administer the formal and special oath to the officer put in charge of the jury, it is not absolutely necessary, if the bailiff has been duly sworn. U. S. v. Ball, 163 U. S. 662, 674, 16 Sup. Ct. 1192, 41 L. Ed. 300; Thomp. & M. Jur. § 326. In this case the court directed the bailiff to be sworn, meaning the special oath, and reply was made that he had been sworn, the officers meaning the regular official oath, and it passed at that without objection by the defendant or suggestion from any source. But the court gave full instructions to the officers and the jury, and admonished the jury at the adjournment of every sitting against talking about the case, or allowing themselves to be talked to by others, according to the invariable practice of this court in all cases.

There is no force in the objection as to the action of the court in suppressing the taking of notes by jurors. The court had noticed for several days that two of the jurors persistently and diligently took notes of all the testimony and of all the occurrences of the trial, and another juror occasionally took notes of the evidence. The attention of counsel was called to it, with the result that the jurors were directed to discontinue the practice, and were required, after explanation of the reason of it, to seal up the notes they had taken, and deliver the envelopes to the marshal for safe custody, these being returned sealed as they were by themselves to the jurors after the trial. There was an exception by the defendant to a juror's taking notes by permission of the court in Agnew v. U. S., 165 U. S. 36, 45, 17 Sup. Ct. 235, 41 L. Ed. 624; but nothing came of it, because the record did not show that any notes were taken in fact. But the practice is an improper one. Thomp. & M. Jur. § 390. It gives the juror taking notes an undue influence in discussing the case when he appeals to his notes to settle conflicts of memory. Without corrupt purpose, his notes may be inaccurate, or meager or careless, and loosely deficient, partial, and altogether incomplete. With a corrupt purpose, they may be false in fact, entered for the purpose of misleading or deceiving his fellows when he comes to appeal to them. There is no protection against such dangers except to forbid the practice. It is allowed by statute in some states, which would imply that without a statute it is not permissible. Id. § 402. It is perhaps a matter within the discretion of the court, like others of that character.

The defendant lodged exceptions to every action of the court on a challenge for cause allowed by the court, and to every challenge for cause disallowed, and the rulings are assigned as ground of motion for new trial. The jury was sworn with 14 of the 20 peremptory challenges unused, which is conclusive that he could have set aside any juror as to whom a cause for challenge had been disallowed, not satisfactory to him. He had no right of selection of those where the challenge for cause was improperly allowed. Therefore no injury was done, as by the nonuser of his peremptory challenges he has demonstrated that the jury was impartial. There can be no ground for new trial in this, as the cases already cited from the supreme court itself abundantly show. Thomp. & M. Jur. § 271; Henry v. State, 4 Humph. 270; Hines v. Same, 8 Humph. 597. But the challenges were proper under any circumstances. Two of the jurors stated that a former

United States marshal had met them on their way to the court, and told them that he would have been tempted to do as the defendant did, under the same provocation, and expressing his friendship for defendant. These jurors said they were unaffected by the incident, and could try the defendant impartially. The court was quite willing to believe this, but thought better to stand them aside, and sustained the challenge, as it did to another juror to whom a deputy marshal in attendance on the court, engaged in summoning the talesmen, had spoken deprecatingly of the defendant's case, although it made no unfavorable impression on the juror's mind. In the last-mentioned instance, if the defendant's challenge for cause had been disallowed, and his peremptory challenges had been already exhausted, there would have been a very plausible ground for a new trial, but not otherwise. Altogether it is the duty of the court to see that an impartial jury is sworn, and there are many circumstances and appearances that control the rulings on challenges which it is difficult to define or express, and so it is only where there is manifest injury to defendant's right of free challenge for himself to the full extent allowed by the law. All doubts should be resolved in his favor where he challenges for cause, if they be reasonably supported by the circumstances pertaining to the disputed juror. And the prosecution should be similarly protected against well-founded suspicion of partiality in favor of the defendant. No fixed rules of judgment are possible, and the court must be left to some elasticity of discretion, without arbitrariness of action, however. The jury in this case was an impartial jury, beyond doubt, and the action complained of by defendant cannot be ground for new trial, where the verdict is sustained by the evidence, as this surely is.

The last ground of the motion for new trial necessary to notice is that based on the alleged defect in the indictment. It has been fully disposed of in the progress of the trial, and the instructions to the jury explained the peculiarities of this indictment and of this prosecution. To put the objection in the language of counsel, the defendant has been put on trial for murder, and the conspiracy for which he has been convicted is not within the law of murder or homicide. The conclusive answer is that under Rev. St. §§ 5508, 5509, the defendant has not been tried for murder or homicide of any grade, notwithstanding the appearances of things. He has been tried for a conspiracy, accurately defined in the statute and the indictment, not to murder the deputy marshal whom he killed, but to deprive him, and the marshal whom he wounded in the combat between the conspirators and the marshal's posse, of their constitutional right to arrest him on legal process, or, to use the language of the statute, of the free exercise or enjoyment of a right or privilege they had in respect of his arrest on process under the constitution and laws of the United States. He is charged by the indictment in all its counts with having so conspired to "injure, oppress, threaten, and intimidate" these citizens in the exercise or for having exercised that privilege or right so guarantied them.

He has not been charged and tried "for two separate and distinct offenses at the same time," nor for two independent offenses in the same indictment. In the Pointer and other cases, supra, the su-

preme court of the United States has considered the joinder of two offenses in the same indictment under our statutes (Rev. St. § 1024), and permitted two separate murders; or rather the one murder on the same occasion of two men, if it may be so expressed, to be joined in one indictment; the test being that the joinder must not embarrass the defendant in his defense. But that question does not arise in this case, since the defendant has been indicted for only the one offense of conspiracy, resulting, so the indictment charges, in its execution in the murder of one Garner, a deputy marshal, and that is the only offense in the paucity of existing legislation of which he could be charged in this jurisdiction. We have no jurisdiction, as yet, of the murder of United States officials while in the discharge of their duty, nor of conspiracies to murder them, but we have of that conspiracy charged in the indictment and above described in the language of the statute. And we may, by the same statute, if murder results, punish the conspiracy, successfully effected, by the same punishment that the state inflicts for the murder. That is all. We do not accuse, try, and punish the murderer, but we do accuse, try, and punish the conspirator with that punishment wherewithal the state would punish the murderer if the state saw fit to prosecute for the murder, which it has never done in this case,—to its shame be it said.

The court concedes that it would have been better if this indictment had contained a count charging only an effective conspiracy, disassociated with the resulting murder of the deputy marshal, and relying for conviction only on the injury, the oppression, the threatening, and intimidation which resulted in the deprivation of the essential privilege of the officers, as citizens; which were, all of them, found not only in the murder of Garner, the deputy, but in the serious wounding of Brown, the marshal himself, and in driving off the whole of the posse by force of arms and bloody battle, and, moreover, in the successful defeat of the service of the process by arrest. But this is not necessary, and the conviction can be sustained on the indictment as drawn, although the prosecution has failed, in the opinion of the jury, to establish murder, as one of the results of the effected conspiracy. The conspiracy is, none the less, established by the killing, the wounding of one not killed, the intimidation of the others, the very use itself of violence, and the successful accomplishment of the purpose not to be arrested. The technical, statutory conspiracy is properly charged and abundantly proved, although no "other felony or misdemeanor" has been committed by the laws of the state. Rev. St. § 5509. Independently of the laws of the state, the federal offense has been committed, and the conviction was proper, whether any other crime resulted or not.

It is useful to explain that this indictment was found soon after the outrage on the officers and their constitutional privilege was done; but the defendant, when arrested finally, was put on trial for the original offense of illicit distilling, and, being convicted, has been serving a four-years term of imprisonment for that offense. The motion for a new trial having been overruled, the defendant was, on motion of the district attorney, sentenced to the full penalty of the statute. Rev. St. §§ 5508, 5509.