## LUCAS v. UNITED STATES.*

## HICKS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 9, 1921.)

### Nos. 5619, 5620.

1. **Criminal law ⊜⊃97(1)—District where overt act is committed has jurisdiction in conspiracy prosecution.**

   A conspiracy to do a certain thing is not ended for all purposes when the plan is completed, but carries on through every act done in the execution of that plan, and a charge of conspiracy to illegally transport liquor from one state into another, and the carriage of the liquor into the latter state, is sufficient to give the court in that district jurisdiction of the offense.

2. **Criminal law ⊜⊃619—Consolidation of cases for trial held proper.**

   The consolidation for trial of separate indictments against the same defendants, growing out of the same transaction, *held* proper.

3. **Criminal law ⊜⊃200(6)—Acquittal on one indictment held not inconsistent with conviction on another, based on the same transaction.**

   An acquittal under an indictment for conspiracy *held* not inconsistent with conviction under another, charging the same conspiracy and alleging the same overt acts, but that the conspiracy was formed in a different state.

4. **Criminal law ⊜⊃1169(12)—Error in admission of confession cured by subsequent evidence.**

   Error in admission of a confession without proper foundation being laid by showing that it was voluntary *held* cured, where such fact was shown by defendant.

5. **Criminal law ⊜⊃854(7), 855(1)—Permitting separation of jury and instructing as to duty to agree held not improper.**

   Permitting a jury to separate during their consideration of a case because accommodations could not be procured for them together, and general instructions given on their reassembling as to their duty to agree, if possible, *held* proper.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Criminal prosecution by the United States against Roy Lucas and Jack Hicks. Judgment of conviction, and defendants bring error. Affirmed.

W. B. King, Norton Montgomery, and William H. Dickson, all of Denver, Colo. (Quaintance, King & Quaintance, of Denver, Colo., on the brief), for plaintiffs in error.

Harry B. Tedrow, U. S. Atty., of Boulder, Colo.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. Separate writs of error by Roy Lucas and by Jack Hicks from conviction for conspiracy to violate the Reed Amendment (39 Stat. 1069 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8739a, 10387a–10387c]). Lucas and Hicks were jointly indicted in four separate cases, which were consolidated for trial. The conviction was under one of the indictments charging conspiracy at

Cheyenne, Wyo., to transport intoxicants from that place to Denver, Colo. The points here urged are: Lack of jurisdiction; wrongful consolidation of the four cases for trial; insufficiency of the evidence; erroneous admission of evidence; erroneous instruction and wrongfully permitting the jury to separate after submission of the case.

[1] The indictment was in Colorado, jurisdiction there being based upon an overt act. The overt act charged was that the accused, on a certain date, caused intoxicants to be transported in interstate commerce from Cheyenne into Larimer county, Colo., in an automobile driven by one Ray. The objections urged to this jurisdiction are, that the indictment does not allege what physical act was done in Colorado; that the offense contemplated by the conspiracy was completed before Colorado was reached in the course of transportation; that it was necessary to show that Ray was a conscious party to the conspiracy; that the bare allegation that accused "caused to be transported" is fatally defective as a statement of a mere conclusion, since it does not allege the acts done by the accused to cause such transportation in Colorado. The first criticism is baseless, as the indictment clearly charges the physical act of transportation by automobile in Colorado. The contention that the offense was completed before the Colorado state line was reached is untenable. A conspiracy to do a certain thing is not ended for all purposes when the plan is completed. It carries on through every act done in the execution of that plan. The conspiracy charged here was to transport intoxicants to Denver, and the carriage by an automobile of those intoxicants into Larimer county as a part of the trip was an act in direct execution of the conspiracy, and amply sufficient for the purpose of lodging in the District Court for Colorado jurisdiction of the conspiracy. Block v. United States, 267 Fed. 524, 529, recently decided by this court, is directly controlling. The contention that the driver of the automobile in Larimer county must have been a conscious party to the conspiracy in order for his acts there in transporting the liquor to be a basis of jurisdiction, is frivolous. The allegation of the indictment as to causing the intoxicants to be transported would be sufficient as following the statute, but here the method, time, and place of transportation are set out clearly. The attack upon the jurisdiction of the court cannot stand.

[2] The objection to the consolidation of the four cases is not well taken. In each case the defendants were the same. In two of the cases each charged a conspiracy to violate the Reed Amendment, differing only as to the place where the conspiracy was alleged to have been entered into. The other two charged conspiracy to transport liquor not properly labeled, differing only as to the place of the conspiracy. All of the cases related to the same transaction. No prejudice is seen to have resulted from the consolidation of the cases for trial, and the discretion of the trial judge in ordering the consolidation is approved.

[3] The contention that the verdict of acquittal in one of the other cases, tried at the same time, is inconsistent with conviction in this case is unsound. The case in mind was an indictment charging conspiracy in Denver, Colo., to violate the Reed Amendment by transporting in-

toxicants from Cheyenne, Wyo., into Denver, Colo. The overt act was the same in that indictment and in the present case. Obviously, the two indictments were framed to fit the proof as to whether the conspiracy had been entered into in Denver or in Cheyenne. The jury decided that the conspiracy was formed in Cheyenne. The inevitable result of such a view was to convict in the present case, and acquit in the other case.

It is also contended by Lucas that he should have been permitted a separate trial. We find no sufficient basis for error in denial of this request. The evidence was amply sufficient to justify conviction.

[4] The evidence claimed to have been erroneously admitted was a confession of the defendant Hicks. It is claimed that no proper foundation was laid for the admission of this evidence, because it was not shown that the confession was voluntary At the time the confession was offered this proof was defective, and no proper foundation was laid for the admission. However, in cross-examination of the same witness, defendants clearly developed that the confession was voluntarily given; therefore the error of admitting it was cured. The trial judge clearly and carefully limited the effect of this confession to Hicks, so that Lucas was not prejudiced thereby. Holmes v. United States, 267 Fed. 529.

[5] The contentions as to improper instruction and improper separation of the jury may be better understood by first considering the matter of the separation of the jury. After having considered their verdict for six hours until 10 o'clock at night, the jury was permitted to separate until the following morning. The reason for permitting this separation was that the marshal was unable to secure quarters where he could hold the jury together overnight. The separation of the jury under these circumstances and upon the order of the court, was proper, and no prejudice to accused is shown to have arisen therefrom.

While the jury was separated, one of the jurors told several persons that the jury had disagreed. It having been communicated to the judge that a juror had talked about the case and the foreman of the jury having communicated to the court that the jury were in disagreement, the court, on the following morning, gave the instruction following:

"Gentlemen, I have a communication from you, through your foreman, in which he reports that the evidence has been fairly discussed and that there seems to be no prospect of agreement, and indicating how the jury stands in numbers. He does set out what leads me to believe that you were not all evenly divided. There was a very small number of the jurors on one side, and the greater portion of them on the other. It appears to be the position taken by a small part of the jury, and he seems to think there is no hope of agreement. We have frequently had jurors feel that way about a case, and yet reach a verdict. A trial of a lawsuit, of this number of witnesses, is expensive to both sides. It is difficult to tell what to do at times under such circumstances. Of course, we look at it from the point of view that the 12 men now on the jury are about as capable, if not fully so, as any other 12 men we could get to determine the case. You have not had the matter under consideration for a great length of time. We have kept juries for two or three days, and while I always hesitate to do that, I think it ought to be done if

the jury in the end reached a verdict. And yet, on the other hand, I shrink from the idea of imposing hardship on men, keeping them together. So I hope you will appreciate the attitude which the court necessarily finds itself in under conditions of this sort. The testimony in this case is not voluminous. It is not difficult to keep it in mind. Of course, if any juror, under his oath and his conscience, cannot say that he was willing to agree with his fellows, no one can ask him to do so. But when we find a juror in that condition, in that state of mind, the only reasonable and fair thing for him to do is to examine himself, question his own conscience, inasmuch as all of his fellows stand against him, go over it again, and listen to them in patience, and see whether he is not wrong. So that I hardly feel that I can now discharge the jury. As I have said, you have only had about six hours' consideration of this case. The marshal telephoned me after supper last night that he was unable, on account of the great number of visitors now in the city, to find a place where you could be accommodated and have beds, and that if you were kept together you would have to remain up. That is an extreme hardship on any one, and knowing that there were some men on the jury along in years, I felt I would not be justified in subjecting you to that sort of thing, so I permitted you to go to your homes last night, and told the marshal to instruct you to go home and return to your jury room this morning. That is recognized as the proper procedure in criminal cases throughout the country, under such circumstances. Of course it was highly important, and you gentlemen knew that it was important from what had already been said in this case, that you should not talk to anyone about the case. To do so would be a contempt of court, and subject you to punishment as in contempt.

"I do not know that it is true, but I am pretty reliably informed—there may be a mistake about it—that some of the jurors, after they went to their rooms, engaged in telephone conversations with others about this case. That I shall investigate. I call your attention to it now, not for the purpose of taking that up, but to let you understand that if I am compelled to permit you to separate again, this conduct, of the character to which I refer, cannot be indulged in. It may be, if we have to keep you overnight, we can get a room tonight. If we cannot get a room we will then consider whether we can follow the course that was followed last night. This jury is now each an officer under oath, and is bound to consider nothing but the testimony in this case, and he must keep his mind free from outside communications, and decide this case solely on the testimony adduced here. We will do all we can while you are in consultation to help relieve your burdens, and make it just as comfortable for you as the officers of the court can make it. If at any time the jurors are in doubt about any principle of law that has been announced, you are at liberty to come into the court and have the court readvise you in those respects You are bound by the evidence and the law in the case, and you are expected to return a verdict accordingly.

"I will ask you to retire to your room again."

No exception was saved to this additional charge, but we have considered the objections urged against it because the liberties of citizens are involved. We think the charge timely, proper, and not prejudicial to accused.

The judgments are affirmed.