## McHENRY v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted October 3, 1921. Decided November 7, 1921.)

### No. 3540.

1. **Criminal law ⊚⟶1155—Court has discretion to permit separation of jury in capital cases.**

The trial court has discretion to permit the separation of the jury pending the trial even of a capital case, and its permission of separation is not subject to review, unless it appears affirmatively that prejudice resulted to the defendant.

2. **Criminal law ⊚⟶1144 (15)—Not presumed jurors allowed to separate saw objectionable headline.**

In a prosecution for murder, where the jurors were allowed to separate after being cautioned not to read accounts of the trial, in the course of which caution the trial justice said that they could tell from the headlines whether the article referred to the trial, it will not be presumed that jurors saw a headline to which objection was made, but the burden is on accused to show prejudice by affirmative proof that such headline was seen by the jurors.

3. **Criminal law ⊚⟶1144 (15)—Newspaper headline held not to require reversal, if seen by jurors.**

In a prosecution for murder, where the jurors were allowed to separate, a newspaper headline published during the trial, which stated that the prosecution charged defendant had killed a man in another state, would not require reversal of the conviction, even if seen by the jurors, since it will not be presumed they would give any weight to such a statement.

4. **Criminal law ⊚⟶371 (12)—Evidence of previous robbery and killing admissible to show motive for killing officer.**

In a prosecution for murder of a policeman, when he was attempting to arrest defendant for a robbery and murder committed a few hours before, evidence of the previous robbery and murder was admissible to show defendant's motive for killing the policeman.

5. **Criminal law ⊚⟶374—Evidence as to previous offense held not objectionable as giving details.**

In a prosecution for murder of a policeman, evidence of a previous robbery and murder committed by defendant, admissible to show motive, was not objectionable as giving the details of the previous events, where the witness merely stated that defendant held up a store, and that as the witness left the store he heard a shot, and on returning found his employer lying on a blanket groaning.

6. **Homicide ⊚⟶166 (1)—Court has considerable latitude in admitting evidence to show motive.**

In homicide cases, the trial court is allowed considerable latitude in admitting evidence on the question of motive.

7. **Criminal law ⊚⟶409—Offer to admit held not sufficient to exclude testimony as to motive.**

In a prosecution for murder of a policeman, defendant's offer to admit that he was suspected of having committed a felony, and that the policeman had a right to attempt to arrest him, was insufficient to require the exclusion of evidence of the previous robbery and murder, for which the arrest was attempted, since the offer did not disclose, as did the evidence, defendant's motive for resisting arrest.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Criminal law ⊗⟶1169 (5)—Statement relating to defendant's prison record held not prejudicial.**

   In a prosecution for homicide, testimony on the issue of defendant's sanity, given by a warden of a prison in another state, in which he re-ferred to defendant's record, was not prejudicial to defendant, where it was limited by the court to the issue of sanity.

9. **Witnesses ⊗⟶255 (4)—Can refresh recollection by letter of another used in conversation with accused.**

   A witness, testifying as to the sanity of accused at the time of a con-versation, can refresh his recollection as to the questions he then asked accused by referring to a letter which he had at that time, and on which he based his questions, though that letter was written by another.

10. **Criminal law ⊗⟶1169 (5)—Testimony as to previous offense, admitted to show sanity, held not reversible.**

    In prosecution for murder, where the defendant's sanity was in issue, testimony by a witness as to a conversation with accused, in which he asked defendant if, when a certain house was searched, he did not cover the officers with revolvers and make his escape, does not require reversal, where the court told the jury such statement was not to be considered as establishing any offense by defendant, but merely as bearing on his mental condition.

11. **Homicide ⊗⟶304—Evidence held not to require instruction on accidental shooting.**

    In a prosecution for murder of a policeman, evidence that the police-man was shot several times while grappling with defendant, and defend-ant's testimony that he shot several times, did not require the giving of a requested charge that, if defendant's revolver was accidentally discharged, he was guilty only of manslaughter.

12. **Criminal law ⊗⟶729—Improper remark, withdrawn by counsel, held not prejudicial.**

    In a prosecution for homicide, a reference by the prosecuting attorney to defendant as a young villain does not require reversal of the conviction, where, upon objection, the court disapproved the remark, and the attorney admitted he should not have made it, and requested the court and jury to disregard it.

Appeal from the Supreme Court of the District of Columbia.

John McHenry was convicted of murder, and he appeals. Affirmed.

S. McC. Hawken and G. F. Havell, both of Washington, D. C., for appellant.

J. E. Laskey, Peyton Gordon, and L. H. Vandoren, all of Washington, D. C., for the United States.

SMYTH, Chief Justice. The defendant was indicted for the murder of a police officer who was attempting to arrest him for a hom-icide which had been committed about an hour before. He was tried, convicted, and sentenced to be executed. Complaining of the trial court, defendant makes 12 assignments of error, but groups them in argument under five heads. We shall deal with each group separately.

The first relates to the refusal by the court of defendant's request to confine the jury during the trial, and to its action in overruling a motion made by the defendant to withdraw a juror because of a head-line which appeared in a city newspaper.

[1] Whether or not the law requires a jury in a homicide case to be confined by themselves during the trial presents a question which has not been passed upon directly by this court. It is conceded that the old common law required jurors in such cases to be confined and that it was the practice to do so in this District until recently. There were many practices of the old common law with respect to the treatment of jurors which were very harsh: They were kept together during the trial, and on submission of the case were placed in charge of a sworn officer, without food, drink, fire, or light, except by permission of the court, and if they did not agree before the court adjourned they were carried around the circuit from place to place in a cart. This was for the purpose of coercing them into agreement, as well as to keep them free from improper influences. Jones v. People, 6 Colo. 452, 45 Am. Rep. 526; State v. Hornsby, 8 Rob. (La.) 554, 41 Am. Dec. 305; 16 R. C. L. 306. No one will contend, we think, that such treatment would be tolerated in modern times. In that respect the old law has been greatly modified, as is shown by the carefully prepared brief of appellant's counsel. In some jurisdictions the jury in capital cases are required by statute to be kept secluded from all communications with the public during the trial; in others the courts hold that under the common law as understood by them the jurors may be permitted to separate; and in still others the course to be pursued is placed in the sound discretion of the court.

We learn from United States v. Woods, 4 Cranch, C. C. 484, Fed. Cas. No. 16,760, that the judges in this District as early as 1834 were in doubt as to what the law on the subject was. And the question has remained unsettled ever since. In Stout v. State, 76 Md. 317, 330, 25 Atl. 299, 303, a capital case, decided in 1892, Mr. Chief Justice Alvey, speaking for the court, said that it was not error to permit the jury to separate, but added:

"Of course, the separation should only be allowed when attended with those precautions and safeguards necessary to secure entire freedom from approach or external influence of any kind. * * * But each case rests upon its own peculiar circumstances, and is within the sound discretion of the trial court, and is therefore not the subject of appellate review, except where it is affirmatively shown that the party has been prejudiced by the action of the court."

We get our common law immediately from Maryland (Code, § 1), and this decision indicates the view of the highest court of that state as to what the common law is on the point we are considering.

Our attention is called to state decisions and decisions of inferior federal courts on the subject which appear to be in conflict with the holding of the Maryland court, but we need not concern ourselves about them, because, as we see it, the question has been definitely settled by the Supreme Court of the United States in Holt v. United States, 218 U. S. 245, 251, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138. In that case Holt was convicted of murder committed within a military reservation which was under the exclusive jurisdiction of the United States, and was sentenced to imprisonment for life. The jury were allowed to separate during the trial, but were cautioned by the court that they must refrain from talking about the case in any

way, and avoid receiving any impressions as to the merits, except from the proceedings in court. The defendant filed an affidavit, which was not denied, that members of the jury had said that they had read the daily papers having articles on the case while the trial was going on, and the articles were set forth. The court remarked that where jurors were permitted to separate it was safe to assume that they saw something of the public press, and the question was whether or not, under this assumption, error had been committed in failing to keep the jury in the custody of the marshal. Disposing of the matter the court said:

"As to his [the judge's] exercise of discretion, it is to be remembered that the statutes or decisions of many states expressly allow the separation of the jury even in capital cases. Other states provide the contrary. The practice has varied, with perhaps a slight present tendency in the more conservative direction. If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day"

—and concluded thus:

" * * * We do not see in the facts before us any conclusive ground for saying that his [the judge's] expressed belief that the trial was fair and that the prisoner has nothing to complain of is wrong."

This means that it is in the discretion of the court to permit the jury to separate in a homicide case, and that his action in that respect will not be reviewed, unless it appears affirmatively that prejudice resulted to the defendant.

[2] In this case, immediately after the jury was sworn, the trial justice cautioned them that during their separation they must not discuss the case with any person whatever, or permit any person to come and discuss the case with them, and must not read anything they might see in the press with regard to the case. He said they could tell by the headlines whether or not there was any reference to the case in any paper that might come into their hands. These instructions were to be followed, he urged, so that they could hear the testimony unbiased and as though they had actually been incarcerated. He reminded them that they were men of intelligence, who knew their duty; that they had taken an oath to try the defendant according to the law and the evidence, and that they could not do this if they listened to any outside influence whatever; and, finally, he assured them that he trusted them as men of honor, under oath, to do their duty. No contention is made that any member of the jury violated these instructions, but it is said that the court permitted them to read the headlines, and that, since the following headline, "Prosecution Charges Boy Slayer of Two Here Killed Man Near Boston," appeared in one of the city papers during the trial, there is a presumption that some of the jurors read it, and hence that prejudice resulted to the defendant. There was no proof that any of them had read it. We may assume that they saw something of the public press, as was said in the Holt Case, but not that they saw any particular article in a particular newspaper. The mere opportunity to see it raises no presumption that it was seen.

[3] During the trial the headline was brought to the attention of the trial justice out of the hearing of the jury and a motion was made to

withdraw a juror because of it. The motion was overruled, and we think properly, because, as we have already said, there was no evidence that the headline had been seen by any member of the jury. Even if there was, our holding would be the same. There is nothing in it which would be likely to influence the jury. It does not say that the "Boy Slayer" referred to had killed another man, but that the prosecution charged him with doing it. Intelligent and conscientious jurors, having in mind the strong admonition of the court, would not be influenced in their verdict by such a statement. In Reynolds v. United States, 98 U. S. 145, 155 (25 L. Ed. 244), Mr. Chief Justice Marshall is quoted as having said in Burr's Trial that—

"Light impressions, which may fairly be presumed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of the testimony, constitute no sufficient objection to a juror."

See also United States v. Reid et al., 12 How. 361, 366, 13 L. Ed. 1023; Colt v. United States, 190 Fed. 305, 310, 111 C. C. A. 205; State v. Cucuel, 31 N. J. Law, 249; People v. Leary, 105 Cal. 486, 39 Pac. 24; People v. Gaffney (N. Y.) 14 Abb. Pr. (N. S.) 36.

Testimony was admitted over the objection of the defendant which tended to show that, about an hour before the killing of the officer, the defendant had killed and robbed one Mulcare, a merchant, in his place of business, in this city. For the purpose, as stated, of preventing the details of the crime from getting to the jury, the defendant offered to admit that at the time of the shooting of the officer he was suspected of having committed a felony, that the officer knew it, and that he had a right to arrest him. He also moved to strike out so much of his confession as related to what occurred in the Mulcare store at the time of the robbery. The offer was rejected and the motion overruled. These actions of the court are assigned as the second group of errors.

[4] The testimony objected to was given by an employé of Mulcare. He said that the defendant came into the latter's store and asked to see a pair of gloves; that he then drew a revolver and demanded Mulcare's money; that Mulcare fired at him, and he returned the fire. Witness left the store and as he did so he heard another shot. Later he returned and found Mulcare lying on a blanket. He was surrounded by a lot of people, was very pale, and was groaning, and was subsequently removed to a hospital. The officer who was afterwards killed came to the store, and witness told him what he knew about the shooting of Mulcare. It is admitted that it was proper, though not necessary, for the government to show defendant's motive for killing the officer. Motive may be very important in determining whether or not the accused was actuated by deliberate, premeditated malice. The testimony objected to had a strong tendency to prove that defendant intended to kill the officer, that he might escape arrest for the crime he had committed a short time before. Before the testimony was received the court warned the jury that it must be considered only on the question of motive, and that they must not deduce from the fact that he (the defendant) had shot Mulcare, he was guilty of shooting the officer.

[5] Defendant says the witness should not have been permitted to give the details, but we do not see how he could have said less, and told all that was necessary to show that a·crime had been committed. He could not say that Mulcare had been shot, for he did not know; but he could say that a shot had been fired by the defendant, and that when he returned to the store he found Mulcare lying on a blanket groaning. From this the jury could infer what had taken place, that a crime had been committed and probably by the defendant.

[6] "Where the question relates to the tendency of certain testimony to throw light upon a particular fact, or to explain the conduct of a particular person, there is a certain discretion on the part of the trial judge which a court of errors will not interfere with, unless it manifestly appear that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors." Thus spoke the Supreme Court of the United States in Moore v. United States, 150 U. S. 57, 60, 14 Sup. Ct. 26, 27 (37 L. Ed. 996) which was a homicide case. With approval the court takes a statement from Hendrickson v. People, 10 N. Y. 13, 31 (61 Am. Dec. 721), that "considerable latitude is allowed on the question of motive"; that is, in proving motive. The testimony here had a legitimate bearing on the question at issue, and there was no error in admitting it. Lomax v. United States, 37 App. D. C. 414; Ambrose v. United States, 45 App. D. C. 112; Ellis v. District of Columbia, 45 App. D. C. 384; People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193.

There is nothing in Boyd v. United States, 142 U. S. 450, 12 Sup. Ct. 292, 35 L. Ed. 1077, much relied upon by defendant, which sustains his contention. In that case the objectionable testimony tended to show that Boyd had committed, or was connected with, several robberies prior to the commission of the homicide with which he was charged. The court said that some of it "had no necessary connection with, and did not, in the slightest degree, elucidate the issue before the jury." It related to five robberies, although the defendant had no connection whatever with three of them. Because of this the court said:

"If the evidence as to crimes committed by the defendants, other than the murder of Dansby, had been limited to the robbery of Rigsby and Taylor, it may be, in view of the peculiar circumstances disclosed by the record, and the specific directions by the court as to the purpose for which the proof of those two robberies might be considered, that the judgment would not be disturbed, although that proof, in the multiplied details of the facts connected with the Rigsby and Taylor robberies, went beyond the objects for which it was allowed by the court."

But because of the evidence with respect to the other robberies the case was reversed. A careful consideration of the other cases cited by the defendant upon this point shows that they are widely different from the one before us.

[7] Moreover, the offer to admit, if accepted, would not prove as much as the government was entitled to prove. It would establish that the officer had a right to arrest the defendant, but the government desired to show that the defendant had a motive for killing the officer,

namely, the desire to escape, and the tendered admission had no tendency to establish this. Nor do we think the court erréd in refusing to strike out the part of defendant's confession relative to the Mulcare killing. It had, for the reasons just given, a legitimate bearing upon the question of motive.

[8] The next group of assignments also deals with questions relating to the admission of testimony. A Mr. Wheeler, chairman of the Board of Prison Commissioners of Maine, was called to rebut the testimony given on behalf of the defendant that he was of unsound mind at the time he killed the officer. In the course of his testimony he said that the prison warden had handed him a file containing a letter from a prosecuting attorney "relating to the details of the record of this young man," meaning the defendant. Defendant moved to strike out the statement. The court overruled the motion, observing in the hearing of the jury that the record might be a good one. There was ample testimony, unobjected to, which showed that defendant had a prison record. Mr. Wheeler testified that he was then in the penitentiary and had twice sought a parole. We do not think that the defendant was harmed by the statement, especially when we consider the strong caution of the court given with respect to Wheeler's testimony, to be referred to in a moment.

[9] The witness was asked to state the questions he propounded to the defendant on the occasion just referred to and the answers made by him. Without objection he gave a number of them, and then said he would like to refresh his memory by consulting a letter which he used in framing the questions. He was permitted to do so, and in this it is said the court erred. It is true the letter was not written by him, but that made no difference. It was the document upon which he based his questions, and was well calculated to refresh his memory as to what the questions were. A price list, not made by the witness, but which he knows to be correct, may be used by him to aid his memory. Morris & Co. v. Columbian I. W. & D. D. Co., 76 Md. 354, 25 Atl. 417, 17 L. R. A. 851; Wilbur v. Buckingham, 153 Iowa, 194, 132 N. W. 960, Ann. Cas. 1913E, 210.

[10] Wheeler testified that he asked the defendant if, when a certain house was searched, he was not found there, and if he did not cover the officers, who were pursuing him, with revolvers and make his escape. Objection was made to this on the assumption that the witness had no right to consult the letter for the purpose of refreshing his memory as to what questions he had put to the defendant. We have already seen that he had a right to do so. Concerning Wheeler's testimony the court said to the jury:

"* * * This statement which Mr. Wheeler has just given, these statements, are not to be taken by you as statements establishing that they are offenses which the young man, the defendant, admitted he committed. They are simply given in evidence here as bearing upon his mental condition at the time Mr. Wheeler examined him, and whether he was then of sound or unsound mind."

[11] The defendant asked the court to charge the jury that if they found that the defendant drew a pistol which was accidentally dis-

charged in the scuffle which ensued between the defendant and the deceased police officer for the possession of the pistol, etc., they should find him guilty of manslaughter.

The killing took place in the Union Station. One witness said he saw some one start to run towards the main waiting room, and at the same time another person called out a short word that sounded like "Stop." The latter ran after the former, soon caught up with him, and grabbed him. Then he heard a pistol shot. The pursuer seemed to attempt to grasp the defendant around the arms. Then there were two more pistol shots in close succession. At that time the pair had gotten over towards one of the rows of seats, and the pursuer forced the other man down on the seat. Another witness testified that he was attracted to the scene by hearing a shot. At that time it seemed to him that two men were grappled together, and that while they were grappled two other shots were fired. In his confession the defendant said:

"I turned around and said, 'Cut it out!' I then fired two or three shots at Armstrong [the officer], who got hold of my pistol and held me until some one hit me in the head and rendered me unconscious."

There is nothing in the record which would warrant a jury in holding that the revolver was accidentally discharged.

[12] Finally, complaint is made of the misconduct of the Assistant United States Attorney in characterizing the defendant as a "young villain." Upon objection having been made, the court disapproved the remark, and the attorney admitted that he should not have made it, and requested the court and jury to disregard it. While it would have been better if the characterization had not been used (Fields v. United States, 27 App. D. C. 433, 449), yet we think that under all the circumstances no prejudice resulted to the defendant.

We have carefully scrutinized the record, and are satisfied that every contention which could be fairly made in behalf of the defendant was presented with force by his counsel, and that the court guarded jealously his rights throughout the trial. In view of this we see no reason for disturbing the judgment, and it is accordingly affirmed.

Affirmed.