Eddie B. KLEVEN and Maynard W. Maetzold, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15645.

United States Court of Appeals Eighth Circuit.

Jan. 22, 1957.

Rehearing Denied Feb. 26, 1957.

John C. Haugland, Devils Lake, N. D. (Clyde Duffy and Duffy & Haugland, Devils Lake, N. D., were on the brief), for appellants.

Robert Vogel, U. S. Atty., Fargo, N. D. (Ralph B. Maxwell, Asst. U. S. Atty., Fargo, N. D., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VAN OOSTERHOUT and WHITTAKER, Circuit Judges.

WHITTAKER, Circuit Judge.

Appellants, Kleven and Maetzold, were severally charged, in separate counts of an indictment, with having violated Section 545, Title 18 U.S.C., in the District of North Dakota, through dealings alleged to have been had by them in and with certain Selkirk seed wheat, known by them to have been unlawfully brought from Canada into the United States. The pertinent provisions of that statute are:

"Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

"Shall be fined not more than $10,-000 or imprisoned not more than five years, or both."

Kleven was charged—in Count I—with having concealed, on December 17, 1954, 60 bushels, and—in Count III—with having purchased, on December 22, 1954, 20 bushels, and—in Count V—with having, on January 22, 1955, facilitated the transportation of 44 bushels, of such wheat, and Maetzold was charged—in Count II—with having purchased, on December 17, 1954, 60 bushels, and—in Count IV—with having purchased, on December 22, 1954, 80 bushels, of such wheat, all with knowledge that the wheat had been unlawfully brought from Canada into the United States, and in violation of the statute.

Appellants moved to dismiss the indictment upon the ground of improper joinder of offenses and defendants. That motion was overruled, and the case was put to trial before a jury.

The jury's verdict found Kleven not guilty on Count I, and found Maetzold not guilty on Count II, but found Kleven guilty on Counts III and V, and found Maetzold guilty on Count IV. The Court, after overruling timely motion for new trial entered judgment upon the verdict, fining appellants $500 each, and they have appealed from that judgment.

The points urged for reversal are (1) that the Court erred in denying their motion to dismiss the indictment for improper joinder of offenses and defendants, (2) that the evidence was not sufficient to support the verdict, (3) that the Court erred in giving a supplemental charge to the jury urging them to reach a verdict, (4) that the Court erred in permitting the jury to disband, after submission of the case to them, without proper admonition, and (5) concealment of possible prejudice by a juror.

Appellants are North Dakota wheat farmers. For years they, as others, had suffered severe crop damage from Black Stem rust. A new variety of wheat, known as Selkirk, and highly resistant

to that disease, had been developed in Canada, but, because of the limited supply, the Canadian government, in August, 1954, imposed an embargo on its exportation, and it was, therefore, difficult to obtain in North Dakota.

There was evidence that, following a conference between one Laliberte, a Canadian farmer, and appellants, at Devil's Lake, North Dakota, Laliberte, in Canada, concealed 60 bushels of sacked Selkirk wheat in a truckload of baled flaxstraw, and, on December 17, 1954, brought it through customs at a port-of-entry between Canada and the United States, declaring the entire load to be flaxstraw, and without disclosing the presence of the Selkirk wheat, and proceeded to Kleven's farm near Devil's Lake, where, in the presence of Kleven and Maetzold, Laliberte unloaded the flaxstraw and then transported the 60 bushels of Selkirk wheat to Maetzold's farm where the latter bought it for $10 per bushel. These were the claimed overt acts upon which Counts I and II of the indictment were based, but, as stated, the jury found appellants not guilty on those counts.

There was further evidence that later Laliberte, in Canada, concealed 100 bushels of sacked Selkirk wheat in another truckload of baled flaxstraw, and, on December 21, 1954, brought it through customs at a port-of-entry between Canada and the United States, declaring the entire load to be flaxstraw, and without disclosing the presence of the wheat, and proceeded to Kleven's mother's farm, where, in the presence of Kleven and Maetzold, Laliberte unloaded the flaxstraw, and sold 20 bushels of the Selkirk wheat to Kleven at $10 per bushel (who placed it in his pick-up truck and drove it to his own farm where he placed it in a haymow and covered it with hay and a tarpaulin), and sold the remaining 80 nushels to Maetzold for $10 a bushel 'who then placed the same in his truck and took it to his farm and placed it in a coulee and covered it with straw). These were the claimed overt acts upon

which Counts III and IV of the indictment were based.

There was evidence, too, that subsequently, Laliberte, in like manner, illegally transported from Canada into the United States additional Selkirk wheat which he sold to other wheat farmers in the vicinity of Devil's Lake, and on January 22, 1955, Kleven, by means of his own truck, caused 44 bushels of such wheat to be transported to the farm of a purchaser located in the community. This is the claimed overt act upon which Count V of the indictment was based.

We will now deal with the points relied upon for reversal in the order they are raised.

██ First, appellants complain that the Court erred in overruling their motion to dismiss the indictment for improper joinder of offenses and defendants. There is no merit in this contention, because Rule 8 of F.R.Cr.P., 18 U.S.C. expressly provides that separate offenses may be charged in separate counts of a single indictment if, as here, they are of similar character or are based on the same act or transaction or upon transactions which are connected or that constitute a common plan; and that rule also provides that several defendants may be charged in separate counts of a single indictment if, as here, the defendants are alleged to have participated in the same series of acts or transactions constituting an offense or offenses. Because of that Rule and these circumstances, there was no improper joinder of offenses and defendants, in this case, and the Court did not err in overruling appellants' motion to dismiss. Moreover, if the indictment had been subject to attack for misjoinder of offenses and defendants—which we think it was not—the proper remedy would have been a motion for a severance under Rule 14 of F.R.Cr.P., rather than a motion to dismiss the indictment. Finnegan v. United States, 8 Cir., 204 F.2d 105, 109.

██ Second, appellants urge that the evidence was not sufficient to support

the verdict of guilty on Counts III, IV, and V. We think that the facts above recited show that appellants are in error in this contention, and that there was ample evidence to support the verdict of the jury. But, moreover, there was no motion for acquittal at the close of the evidence, and "only by the interposition of such a motion is the question of the sufficiency of the evidence to sustain a verdict made a question of law reviewable by this court." Mitchell v. United States, 8 Cir., 221 F.2d 554, 555. See, too, Leeby v. United States, 8 Cir., 192 F.2d 331, 333, and Meier & Pohlmann Furniture Co. v. Troeger, 8 Cir., 195 F.2d 193, 194.

Third, appellants complain that the trial Court erred in a supplemental charge to the jury, urging them to reach a verdict. After the jury had been out several hours without reaching a verdict, the Court called the jury into the box and said to them:

"As I said, I do not know, nor do I wish to know, how you stand, but if much the larger number of you are for one side or the other, a dissenting or minority juror should consider seriously whether his opinion is really well founded when other jurors, equally honest and intelligent, who have heard the same evidence with the same good intention and with an equal desire to arrive at the truth, and under the sanctity of the same oath, do not agree. The minority should ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight and the sufficiency of that evidence which fails to carry conviction to the minds of their co-jurors."

Thereupon the jury again retired, and not long afterward (there is a dispute about just how long it was) returned the verdict in question.

Appellants say that this charge was coercive and prejudiced them, and should not have been given. But we find that practically the same language was used by Judge Walter H. Sanborn, in a supplemental charge to a jury in similar circumstances, in United States v. Allis, C.C., 73 F. 165, 182–183, and that supplemental charge was approved by the Supreme Court in Allis v. United States, 155 U.S. 117, 123, 15 S.Ct. 36, 39 L.Ed. 91. Therefore, it is not correct to say there was error in this supplemental charge to the jury.

Fourth, appellants complain that the Court erred in failing to admonish the jury, when, after the case had been submitted to them, they were permitted to separate for an overnight recess, not to discuss the case among themselves or with others or to permit it to be discussed in their presence or hearing.

It appears that the trial began Wednesday, January 18, 1956, and terminated with the verdict on Tuesday, January 24. The Court permitted the jury to separate each evening and over the intervening weekend from Friday evening, January 20, to Monday morning, January 23, and during the latter day the evidence was concluded and the cause was submitted to the jury, and they deliberated for a period that afternoon, but, being unable to reach a verdict, they were excused and permitted to separate, until the next morning, January 24, when they resumed deliberations, and later that day returned their verdict.

There was no objection to the action of the Court in allowing the jury to separate, and appellants do not here really complain of that action,[1] but, rather, their complaint is that, having permitted the jury to separate on Monday evening, after the case had been sub-

---

[1] No doubt, in recognition of the fact that though, because of differing state statutes and decisions, the rule, about permitting juries to separate during the trial of a criminal case, varies in the several states, the question is one of procedure, and Federal Courts are not enmeshed in those variations, and since Holt v. United

mitted to them, the Court failed to re-admonish the jury not to discuss the case with anyone or to permit it to be discussed in their presence or hearing during the overnight recess.

■ At the first adjournment, on January 18, the Court admonished the jury, in part, as follows:

"From time to time we will stand in recess, and I admonish you now—and I want you to remember it all during the trial of this action—you are not to discuss this matter among yourselves or permit it to be discussed in your presence. You are to keep an absolutely open mind so far as the case is concerned up until the time the Court charges you and you go into your jury room. * * * I won't repeat that each time we stand in recess."

On at least four subsequent occasions, when the jury was excused and permitted to separate, the Court admonished the jury, either in language substantially similar to that above quoted, or simply to observe "the previous admonitions" of the Court; but when, after the jury had deliberated several hours, the Court permitted them to separate, for the overnight recess of from Monday evening to Tuesday morning, he failed to again so admonish the jury. Appellants complain that this was error, especially in view of the fact that none of the earlier admonitions "went beyond the time when the case was finally submitted to the jury."

There was no request to readmonish, and no objection to the failure to re-admonish, the jury when they were permitted to separate for the last overnight recess, nor was there any evidence, or claim, of any actual misconduct of the jury during that overnight recess, or at any time.

While this Court has pointed out the vital importance of proper admonitions to a jury not to discuss the case or to permit it to be discussed in their presence or hearing, and to keep an open mind, until the evidence is closed and the jury retires to deliberate, Winebrenner v. United States, 8 Cir., 147 F.2d 322, 327–329, we have never held, nor has any other Court so far as we can find, that such admonition must be repeated at every recess, and we do not believe it is error to fail to do so when, as here, the Court had earlier given a continuing admonition to the jury, saying "I want you to remember it all during the trial of this action * * * (and) I won't repeat that each time we stand in recess". In these circumstances the jury could not have misunderstood that the admonitions extended and applied to the time of the verdict.

For these reasons, and in these circumstances, we cannot say, especially in the light of Rule 52(a) of F.R.Cr.P., that there was any substantial, prejudicial or reversible error in the failure of the Court to again admonish the jury at the time of the last overnight recess.

■ Finally, appellants complain that a brother of one of the jurors was employed by the United States Customs Bureau at Sarles, North Dakota, as a deputy collector of customs, of which appellants and their counsel had no knowledge, and which the juror failed to disclose on *voir dire,* and that this juror may have been prejudiced against appellants in this case. But the record does not show that this juror was asked on the *voir dire* examination whether any of his relatives were in the employ of the United States Customs Bureau,

States, 218 U.S. 245, 31 S.Ct. 2, 54 L. Ed. 1021, the rule in the Federal Courts has been that the matter is within the sound discretion of the trial judge. To the same effect are McHenry v. United States, 51 App.D.C. 119, 276 F. 761, 34 A.L.R. 1109, Lucas v. United States, 8 Cir., 275 F. 405, United States v. Davis,

C.C.W.D.Tenn., 103 F. 457, and Brown v. United States, 69 App.D.C. 96, 99 F. 2d 131, 132, but in that case the Court said the discretion "should be exercised with the greatest circumspection, especially in prosecutions for capital offenses."

nor that the juror's brother had any knowledge or information about this case, or that the juror had ever talked with his brother about the case, or even what the relationship between the juror and his brother may have been, and the brother took no part in, and was not even present at, the trial. In these circumstances, we cannot say that this juror was prejudiced or unfair, or that the Court erred in failing to grant appellants a new trial on the basis of that later discovered relationship.

If it may be thought that these offenses were both minor and mitigated, it will be remembered that the sentences, too, were moderate. It was the function of the District Attorney to decide whether the circumstances warranted prosecution, and our function is limited to a determination of whether the trial was conducted fairly, in accordance with the law, and free from substantial or prejudicial error, and we think it was, and, therefore, the judgment appealed from must be, and it is hereby, affirmed.

Affirmed.