UNITED STATES of America,
Plaintiff-Appellee,

v.

James J. D'ANTONIO, Defendant-
Appellant.

No. 14515.

United States Court of Appeals
Seventh Circuit.

Feb. 9, 1965.

Rehearing Denied April 9, 1965,
en banc.

Swygert, Circuit Judge, dissented.

Richard E. Gorman, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Charles H. Turner, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, John Powers Crowley, Asst. U. S. Attys., of counsel, for appellee.

Before DUFFY, SCHNACKENBERG and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

James J. D'Antonio, defendant, appeals from a judgment of the district court, on a verdict of a jury, convicting him, upon his plea of not guilty, of theft from an interstate shipment of freight, in violation of 18 U.S.C.A. § 659, as charged in an indictment, under which defendant was sentenced to imprisonment for ten years, pursuant to 18 U.S.C.A. § 4208(a)(1), with no minimum service of sentence before parole.

1. In this court defendant contends that the district court erred in permitting the jury to separate after submission of the case to it and before the verdict and in permitting an improper communication with the jury without defendant or his counsel having an opportunity to be present or object.

The trial before the court and a jury started on November 12, 1963. On November 15, 1963 both sides rested and on November 18, 1963 closing arguments were heard, the court instructed the jury as to the law and the jury retired to consider its verdict.

Then the following colloquy between court and defense counsel occurred.

"The Court: The procedure will now be that I will leave the jury to deliberate—I will not tell them, but I will leave the jury to deliberate until 9:00 o'clock. If they have not reached a verdict at that time, they will return tomorrow morning.

"Mr. Gorman: Does your Honor indicate that they will return tomorrow morning to—

"The Court: —to further deliberate.

"Mr. Gorman: —to further deliberate. They will separate and return?

"The Court: Yes.

"Mr. Gorman: I know that that has been done here lately, Judge.

"The Court: You may make your objections to it, but that is the policy that I am following and I am going to follow it.

"Mr. Gorman: I am only asking for my own education. I know it has been done lately and it comes as something new to me.

"The Court: It is being done all over the United States, except that in the State of Illinois, we follow the Illinois procedure. We have now changed it. I am following it and I think—

"Mr. Gorman: For my own information again, Judge, has there been a rule, a court rule on it?

"The Court: No, no special, formal rule on it; 'most everybody makes an objection to it.

"Mr. Gorman: Well, we will make an objection to it, Judge.

"The Court: All right.

\*   \*   \*   \*   \*   \*

"We will advise the jury to return under all the circumstances tomorrow morning, so that you will have that right [of polling]."

On November 19, 1963, the jury arrived at a verdict, which was filed in open court and the jury was polled.

Thus the record before us shows that after the jury had been instructed as to the law and retired to consider its verdict, the court announced that, if it had not reached a verdict at 9 P.M., he would permit the jurors to separate and return the following morning to continue their deliberations. Over defendant's objections this course of events actually occurred. In addition, after the verdict was rendered, the court asserted that he had told the marshal to read to the jury, during its deliberations and out of the presence of the court, a statement dictated by the court, which the court stated informed the jury: "You are instructed to discuss this case with no one, until you return to the jury room tomorrow at 9:30; and you are not to permit anyone to discuss it with you." The record is otherwise silent as to whether the statement was actually read as dictated. It is also silent as to whether any colloquy occurred between the jurors and the marshal at the reading of the statement, or as to whether any other persons were present on that occasion or then said anything in the jury's presence.

It is basic in the philosophy of the jury system that its members, at all times when they are performing their duties as such, shall be free from contacts with any person save only the presiding judge and those court personnel whose official duties require them to make contact with the jury. The judge has control of the jury but his control cannot be delegated or exercised *in absentia*. Where a jury is deliberating the question of the guilt or innocence of one charged with a felony, it is essential that an absent judge shall not delegate control of the jury to others. When the judge wishes to communicate with the jurors, he should confront them in person. Otherwise, one can only speculate as to the questions which might be asked of the emissary who reads the court's "instruction" and what answers might be given by the judge's emissary or bystanders. All of these possibilities could be avoided by handling everything according to time-honored practices. Essen-

tially, all pitfalls otherwise inherent in this situation would be avoided by the presence of the judge.

In a motion for a new trial, defendant urged as a ground therefor that the court erred (a) in permitting the jurors to separate after beginning their deliberations, (b) in failing to give a cautionary instruction upon so doing, and (c) in permitting the United States marshal to communicate with the jury without defense counsel being advised.

■ It is the right of defendant when on trial upon a charge of the commission of a felony to have his case decided by a jury whose secret *deliberations* are not interrupted by the court's order permitting them to *separate* before a verdict had been reached. Historically this is a right recognized for many years.

■ One of the leading cases is Commonwealth v. Della Porta, 324 Mass. 193, 85 N.E.2d 248 (1949). In that case, after a jury's deliberations had been interrupted by an overnight separation, the jurors were brought into court and were directed to resume their deliberations. This was done and a verdict was returned convicting two defendants. At 249, the Supreme Court of Massachusetts said:

"But in criminal cases, such as the present cases are, a verdict cannot be received after a separation of the jury, unless it is shown to accord substantially with a form sealed up by the jury before their separation. *They cannot be allowed to resume their deliberations.* Commonwealth v. Durfee, 100 Mass. 146; Commonwealth v. Dorus, 108 Mass. 488; Commonwealth v. Tobin, 125 Mass. 203, 206, 28 Am.Rep. 220; Commonwealth v. Walsh, 132 Mass. 8. We have found no case in which this rule has been relaxed." (Italics supplied.)

The verdict was set aside by the reviewing court.

In the case at bar there was no sealed verdict, but a verdict which followed a resumption of deliberations after a sepa-ration of the jury, and was received and became the basis for the judgment from which this appeal was taken.

We have considered below each of the cases cited by the government in its attempt to justify in this case the separation of the jury which interrupted its deliberations.

In Lucas v. United States, 8 Cir., 275 F. 405 (1921), it appeared that, after the jury had deliberated for six hours and until ten o'clock at night, it was permitted to separate, for the reason *that the marshal was unable to secure quarters where he could hold the jury together overnight.* The trial court there instructed the jurors at great length in regard to the circumstances surrounding its separation during the consideration of its verdict, explaining that the marshal was unable "on account of the great number of visitors now in the city, to find a place where you could be accommodated and have beds, and that if you were kept together you would have to remain up." No such situation was presented in the case at bar.

The government also relies on Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). However, that case is distinguishable on several grounds from the case at bar. First, in Holt, the separation was permitted *during the trial*—not after the jury had commenced deliberating upon its verdict; and secondly, no exception was there taken to the action of the trial court in permitting a separation, whereas in the case at bar objection was made, argued and overruled before the separation during deliberations was permitted. Moreover, there was in the case before us unlimited opportunity afforded by the separation during the jury's deliberation on its verdict for third persons to attempt to influence individual jurors during the final and critical phase of the jury's service.

McHenry v. United States, 51 App.D.C. 119, 276 F. 761 (1921) and Wheeler v. United States, 82 U.S.App.D.C. 363, 165 F.2d 225 (1947) involved the effect of the separation of jurors during the trial,

but prior to their deliberation on their verdicts.[1]

The government's reliance on Kleven v. United States, 240 F.2d 270 (1957) is misplaced. There on each day's adjournment the court permitted the jurors to separate but admonished them not to permit the case to be discussed in their presence and to keep an open mind until they went "into your jury room". The error complained of was that, after the case was submitted to the jury and it deliberated several hours, it was permitted to separate without admonition. The court of appeals pointed out, at 274:

"There was no request to readmonish, and no objection to the failure to readmonish, the jury when they were permitted to separate for the last overnight recess * * *."

In these circumstances, the court refused to reverse because of the failure to admonish the jury at the time of the last overnight recess. In the case at bar, by contrast, there was objection by defendant to the separation during deliberations and the motion for a new trial preserved the point, which is now urged in this court.

Finally the government relies upon a *nisi prius* Circuit Court decision in Tennessee. United States v. Davis, 6 Cir., 103 F. 457 (1900), which held, at 469, that where the separation of jurors complained of consisted of their going into lavatories and closets, drug and other stores, under the surveillance of marshals, there was no separation in fact.

What we have said herein cannot reasonably be construed as imposing a too onerous burden upon a trial judge. From actual experience as trial judges, we know that a presiding judge in a criminal case has practical control over a trial before him to such an extent that he ordinarily can arrange its progress so that, in most instances, juries can be instructed as to the law and permitted to commence deliberations so early in the day as to avoid the likelihood of their deliberations running into nighttime hours. Also a trial judge may (1) arrange for the jurors to seal their verdict and separate, if they agree during his temporary absence from court, (2) he may keep the jurors either in the jury room or hotel quarters until they have arrived at a verdict, or (3) he may discharge them if they fail to agree.

At no time is it more essential that the jury should be immunized from outside influences than when it is engaged in deliberating upon what its verdict is to be. During that critical period, when the jurors are engaged in resolving vital issues between the government and the defendant, the judge certainly should not relax the traditional safeguards against outside intrusion. Dispersement into the city at night of a group of men and women who have been deliberating in the security of the courthouse subjects them to the risk of being individually importuned, if not threatened, by telephone calls or personal contacts.

For the foregoing reasons it is necessary that we reverse and remand this case for a new trial.

■ 2. Inasmuch as there may be a new trial in this case, we feel it proper at this time to decide the contention now made by defendant that the indictment failed to state an offense under 18 U.S. C.A. § 659.

The one-count indictment charged defendant "did unlawfully take and carry away from the dock of Day's Transfer, Division of Brady Motorfrate, Inc., Chicago", certain described goods which "were moving as, were a part of, and did constitute an interstate shipment of freight from the Wayne Hardware Company, Inc., South Bend, Indiana, to Day's Transfer, Division of Brady Motorfrate, Inc., Chicago, Illinois; * * * *".

1. In Wheeler, the court relied on the earlier case of Brown v. United States, 69 App.D.C. 96, 99 F.2d 131 (1938), where the court at the request of defense counsel permitted a separation of jurors who were deliberating on a verdict and the court in Brown said that the action of the court was by agreement. Hence defense counsel could not later assign it as reversible error.

Section 659 provides:

"Whoever embezzles, steals, or unlawfully takes, carries away, * * * from any railroad car, wagon, motortruck, or other vehicle, or from any station, station house, platform or depot * * * with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express;

*     *     *     *     *     *

"Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; * *."

It is defendant's contention that the word "dock" used in the indictment, is not one of the facilities set forth in § 659 and hence the charge in the indictment is not within the purview of this act. Reliance is placed upon United States v. Manuszak, 3 Cir., 234 F.2d 421 (1956). However in that case the indictment completely failed to designate any specific place or facility from which the goods were taken. In the case at bar, a place was designated.

Moreover, in United States v. Wora, 2 Cir., 246 F.2d 283 (1957), the court considered an indictment which defendant there charged did not state the place or facility from which the goods were stolen and reliance was placed on Manuszak, but the Second Circuit Court of Appeals, at 286, declined to follow that holding.

In Hagner v. United States, 285 U.S. 427, at 431, 52 S.Ct. 417, at 419, 76 L.Ed. 861 (1932), the court said:

"* * * The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

In United States v. Spatuzza, 7 Cir., 331 F.2d 214 at 216 (1964), cert. den. 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38, we said:

"* * * that the indictment alleges that the goods were stolen from a *depot* of the New York Central System in Chicago, whereas it was proved that the van containing the cosmetics was stolen from the yard of the New York Central Transport Company. The difference between the words 'depot' and 'yard' is a matter of semantics. The words can be used interchangeably to describe the place where a railroad has its loading facilities."

In the case at bar, we find no significant difference between the meaning of the word "dock", on the one hand, and any of the words "station", "platform" or "depot", on the other hand. We therefore hold that the allegation of the indictment as to the word "dock" refers to a facility set forth in § 659 and we cannot sustain defendant's contention that the indictment failed to state an offense under that section.

As we have indicated ante, p. 670, this case is reversed and remanded to the district court for a new trial.

Reversed and remanded.

SWYGERT, Circuit Judge (dissenting).

As I read Judge SCHNACKENBERG's opinion, this court is ruling that under no circumstances may a federal court jury in a felony criminal case be permitted to separate while it is deliberating upon its verdict. I must disagree. I believe that whether a jury is impounded during its deliberation is a matter for the discretion of the trial judge and that unless this discretion is abused or prejudice results, the verdict should stand.

Whereas, in Lucas v. United States, 275 F. 405 (8th Cir. 1921), the reason for the separation of the jury was the inability of the marshal to find quarters

to house the jurors overnight, the reason in the instant case was an apparent practice of the district judge. In my opinion, this difference in reasons for separation does not constitute sufficient basis for a distinction.

Moreover, separation of the jury during deliberation of its verdict and separation during the course of the trial are not logically distinguishable. If jurors are apt to be influenced by outside contacts during periods when they are separated while deliberating, they are equally apt to be influenced by those contacts during the trial. The protection against such evil ordinarily is provided by an admonition from the judge and by an adherence to the admonition by conscientious jurors. When circumstances demand, confinement should be ordered. This, however, is a matter that ought to be left to the sound judgment of the trial judge.

Of course, whatever historical reasons there are for keeping the jury together until a verdict is reached should be considered; however, the validity of the inflexible rule announced today ought to rest on grounds stronger than history alone. Prolonged deliberation and fatigue may force a verdict, but not necessarily a fair one or one that is free from attrition. Minds that are fresh after sleep and rest are more likely to produce a considered and deliberate judgment.

Although not approving of the rather casual treatment by the district judge of the question whether the jury should separate, I cannot say that he abused his discretion. Certainly, no prejudice was shown to have resulted.

Although I also deprecate the casual and unorthodox method of communication between the judge and the jury whereby the jurors were admonished through the marshal not to discuss the case with anyone nor to permit anyone to discuss it with them during separation, the defendant should not be heard to object to an instruction given, or to a procedure adopted, for his protection. It is difficult to imagine how he could have been harmed. Of course, as Judge SCHNACKENBERG suggests, the marshal may not have repeated the exact words of the judge or he may have said more; yet there is nothing in the record to indicate that he did so. I do not think we should reverse on speculation, that is, on the possibility that the officer deviated from the judge's direction.

I would affirm.